**STATE of Minnesota, Appellant,**

v.

**James Murl PAYNE, Respondent.**

**No. C1–86–2093.**

Supreme Court of Minnesota.

May 29, 1987.

**512**

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Alan L. Mitchell, St. Louis Co. Atty., Vernon D. Swanum, Asst. Co. Atty., Duluth, for appellant.

C. Paul Jones, State Public Defender, Bradford Colbert, Asst. State Public Defender, Minneapolis, for respondent.

AMDAHL, Chief Justice.

We granted the state's petition for review of a 2–1 decision of the court of appeals affirming a pre-trial suppression order in a prosecution of defendant for possession of a number of different controlled substances and for possession of a pistol by a convicted felon. The state contends that the court of appeals erred in holding that the frisk which resulted in the discovery of the items was illegal. We hold that the frisk was legal and we reverse and remand for trial.

At 3:00 a.m. on Sunday, May 4, 1986, Duluth police received a report that a prowler had fled after attempting to break into a house at Third Street and Eighth Avenue East, which is in a "high-crime area." The intruder was described as possibly wearing dark sweat pants. Sergeant Roger Waller of the Uniformed Patrol Division dispatched a number of squad cars to specific locations and drove by himself in another squad car toward the scene. Driving in the alley between Fourth and Fifth Street and approaching Seventh Avenue East—*i.e.*, within approximately two blocks of the reported attempted break-in—he saw three men in dark clothes walking "very quickly, almost running" from the front of a house located on Fourth Street and Seventh Avenue East into a parked station wagon. His attention was attracted to the men by "their quick movements to the vehicle on [his] arriving at that intersection," by the fact that they were wearing dark clothes, and presumably by the relative closeness of the location to the scene of the attempted break-in.

As the men got into the car, Waller drove up behind the car, shined his spotlight on the car, reported the stop on the police radio to his fellow officers, and got out and approached the car on foot. He asked all three men for identification. The driver identified himself as Bret Fritz, the front seat passenger identified himself as Anthony Schnorr, and defendant, who was in the back seat on the same side as Schnorr, identified himself. Waller radioed the identification information to the police communication center. Waller then asked

Fritz, the driver, to get out. Either shortly before Fritz got out or at the time he was getting out, Waller saw Officer Champion approach on foot following the prowler's track with his dog and saw the dog go to "the exact location" from which Waller first saw the three men coming. Waller frisked Fritz, the driver, for weapons and found a transparent film canister containing plant material, which Waller suspected was marijuana. Fritz told him that they had been in Minneapolis all day, had just gotten back, and had come to the location in question to visit someone named Ann. Waller put Fritz in the back of the squad car because he wanted to keep him separate from the others until he had questioned each of them individually.

Waller then ordered defendant out and frisked him. He discovered a folding knife in his right rear pocket, a large bulge (not that of a weapon) in his black leather jacket, and a loaded revolver in the jacket. He arrested defendant for possessing a handgun without a permit. A more intensive search of the jacket incident to the arrest resulted in the seizure of the objects— namely, packages of marijuana—that caused the bulge in the jacket. Police also found other controlled substances in a further search incident to the arrest.

Schnorr was subsequently ordered out of the car by other officers, who saw him hiding something under the seat. Controlled substances and drug paraphernalia were found in the car, and marijuana was found on Schnorr's person.

The court of appeals, in a 2–1 decision, held (a) that the stop was legal, as defendant conceded it was,[1] (b) that an immediate frisk of the three men may have been justified, but (c) that Waller's "articulable suspicions were satisfied upon inquiry and there was no valid reason for the frisks that subsequently were conducted." *State v. Payne,* 403 N.W.2d 273, 276 (Minn.App. 1987).

An officer may conduct a limited protective weapons frisk of a lawfully stopped person if the officer has an objective articulable basis for thinking that the person may be armed and dangerous. *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); 3 W. LaFave, Search and Seizure § 9.4(a) (1987). Police may not conduct such a frisk in every case in which they validly stop someone, but there are certain cases in which the right to conduct such a frisk follows directly from the right to stop the person. As Professor LaFave says, Justice Harlan's concurring opinion in the *Terry* case makes explicit what is implicit in the majority opinion, specifically that, as Justice Harlan puts it, " 'the right to frisk must be immediate and automatic if the reason for the stop is, as here, an articulable suspicion of a crime of violence.' " 3 W. LaFave, Search and Seizure § 9.4(a), at 506 (1987), quoting *Terry,* 392 U.S. at 33, 88 S.Ct. at 1886 (Harlan, J. concurring). According to Professor LaFave, lower courts have been inclined to view the right to frisk as automatic "whenever the suspect has been stopped * * * [for] a type of crime for which the offender would likely be armed * * * [including] such suspected offenses as robbery, burglary, rape, assault with weapons, homicide, and dealing in large quantities of narcotics." 3 W. LaFave, Search and Seizure § 9.4(a), at 506 (1987).

The majority of the panel of the court of appeals seems to have concluded that the frisk of defendant would have been proper if conducted immediately but that by the time the frisk of defendant and the others occurred the basis for frisking had evaporated. The majority is correct in assuming that, as Professor LaFave puts it, "[i]f by investigation or happenstance the quantum of evidence needed to justify a forcible stop has dissipated during the interval [between the initiation of the stop and the initiation of the frisk], then it is not permissible to frisk." 3 W. LaFave, Search and Seizure

---

1. Precedential support for this concession may be found in our recent decision in *Appelgate v. Commissioner of Public Safety,* 402 N.W.2d 106 (Minn.1987) (stop of car at 2:30 a.m. within few minutes of report of burglary in progress where car was seen leaving area of apartment complex where burglary occurred, where there was very little traffic in the area, and where driver drove unusually).

§ 9.4(a), at 502 (1987). But we think that the majority erred in concluding that the basis for the frisk that was present at the initiation of the stop had dissipated in the interval between the initiation of the stop and the frisk. Indeed, shortly before Officer Waller frisked defendant, Officer Champion and his tracking dog appeared on the scene and Champion stated that the dog had followed the track from the house where the intrusion occurred to the place where Waller had first seen defendant and the other two men acting suspiciously. Nothing in the interval between the initiation of the stop of the men and the frisk of defendant dissipated the grounds for frisking defendant. Waller simply had called in the names of the men and apparently learned that there were no warrants known to be outstanding; he had not obtained any information establishing that the men had nothing to do with the intrusion. The purpose of having each man step out of the car and of questioning each man individually was to investigate briefly whether the men in fact had anything to do with the intrusion, and the frisk was necessary to insure the officer's safety. In conclusion, we hold that the frisk of defendant was legal.

Reversed and remanded for trial.