**STATE of Minnesota, Petitioner, Appellant,**

v.

**Timothy Eugene DICKERSON, Respondent.**

No. C9–90–1780.

Supreme Court of Minnesota.

March 20, 1992.

William R. Kennedy, Hennepin County Public Defender, Peter Gorman, Asst. Public Defender, Minneapolis, for petitioner, appellant.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, and Michael O. Freeman, Hennepin County Atty., Beverly J. Wolfe, Asst. Hennepin County Atty., Minneapolis, for respondent.

TOMLJANOVICH, Justice.

This case presents the question of whether a police officer executing a warrantless protective weapons search may seize an object from a detainee's pocket based on the officer's perception that although the object is not a weapon, it feels like contraband. The trial court held in the affirmative and the court of appeals reversed. *State v. Dickerson*, 469 N.W.2d 462 (Minn. 1991). We affirm.

After a trial on essentially stipulated facts from the omnibus hearing, defendant was convicted in Hennepin County District Court of fifth degree possession of a controlled substance, crack cocaine. Police found the cocaine in the defendant's jacket pocket during a pat search for weapons. The trial court denied the defendant's motion to suppress the evidence, ruling that the stop was justified under *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and that seizure of the cocaine was justified under a "plain feel" exception to the fourth amendment warrant requirement. A unanimous court of appeals panel found the stop justified but reversed on the "plain feel" issue. The state appeals from that decision and the defendant cross appeals on the validity of the stop.

Shortly after 8 p.m. on November 9, 1989, two Minneapolis police officers were on patrol in a marked squad car in North Minneapolis. At 8:15 p.m., while driving southbound on Morgan Avenue North, the officers saw a man leaving a multi-unit apartment building. The man later was identified as the defendant. The officers were suspicious because one had executed search warrants at the building and had found drugs and weapons. He testified that he also had been called to the building to investigate complaints of drug sales in the hallways. The officer said the apartment building was known as a 24–hour-a-day crack house, and police were monitoring it, especially after receiving a complaint from the local alderman.

The officer testified that the defendant came down the stairs from the building and started to walk toward the street until he saw the squad car and made eye contact with the officer. The defendant then stopped, turned around, walked back three to five feet and took a sidewalk around the side of the house to the alley. The defendant testified that he never saw the police car on Morgan Avenue, never made eye contact with the officers and went directly from the apartment building to the sidewalk that leads to the alley. He said he was on his way to a friend's house and the alley was the fastest route. The trial judge credited the officer's version and found that the defendant had turned abruptly after seeing police.

The officer testified that the defendant's change of direction made him suspicious, and he told his partner to pull the squad car into the alley so he could "check [the defendant] for weapons and contraband." They drove into the alley, where the defendant was walking southbound. The officer, who never had seen the defendant before and knew of no criminal activity by him, confronted the defendant and ordered him to submit to a pat search.

The officer described the search as follows: "As I pat searched the front of his

body, I felt a lump, a small lump in the front pocket [of the defendant's nylon jacket]. I examined it with my fingers and slid it and felt it to be a lump of crack cocaine in cellophane." The officer then reached into the defendant's jacket pocket and pulled out what proved to be .20 grams of crack cocaine in a knotted sandwich-wrap bag. The confiscated material was described as the size of a pea or a marble.

### The Stop

■ Warrantless searches "are *per se* unreasonable under the fourth amendment—subject only to a few specifically established and well-delineated exceptions." *Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967). One such exception is the protective pat search for weapons. *Terry* holds that police may stop and frisk a person when (1) they have a reasonable, articulable suspicion that a suspect might be engaged in criminal activity and (2) the officer reasonably believes the suspect might be armed and dangerous. 392 U.S. at 30, 88 S.Ct. at 1884. If both of those factors are present, police may "conduct a carefully limited search of the outer clothing of such person[ ] in an attempt to discover weapons which might be used to assault him." *Id.*

■ We have held that one circumstance giving rise to reasonable suspicion is evasive conduct. *State v. Johnson,* 444 N.W.2d 824, 827 (Minn.1989). As the court of appeals and the defendant correctly point out, merely being in a high-crime area will not justify a stop. *See Brown v. Texas,* 443 U.S. 47, 52, 99 S.Ct. 2637, 2641, 61 L.Ed.2d 357 (1979). But defendant's evasive conduct after eye contact with police, combined with his departure from a building with a history of drug activity, justified police in reasonably suspecting criminal activity.

■ In this case, defendant denied making eye contact with the officer and denied making a sudden change in direction, but the trial court, which had an opportunity to observe both the officer and defendant testify, credited the officer's testimony. We

accord great deference to the trial court's determinations in this area. "The credibility of witnesses and the weight to be given their testimony are determinations to be made by the factfinder." *DeMars v. State,* 352 N.W.2d 13, 16 (Minn.1984). We therefore agree with the trial court and the court of appeals that the stop was valid.

### The Search

■ Because the stop was valid under *Terry,* police were justified in frisking the defendant if they reasonably suspected he could be armed and dangerous. In this case, the defendant's suspicious behavior, the history of drug activity in the immediate vicinity and Officer Rose's personal experience in seizing guns from the building the defendant left justified a pat search. The remaining issue is whether the search was "carefully limited" as *Terry* requires. The court of appeals held that police exceeded the scope of a *Terry* search. We agree and affirm.

While we give great deference to the trial court on factual determinations, that deference is not unlimited. The trial court's findings "will not be reversed upon review unless clearly erroneous or contrary to law." *State v. Gilbert,* 262 N.W.2d 334, 340 (Minn.1977) (citations omitted). In evaluating the search in this case, the trial court made errors of fact and law, requiring a reversal of the defendant's conviction. When the correct law is applied to all of the facts, it is clear that the defendant's fourth amendment right to be free from unreasonable searches and seizures was violated. The pat search of the defendant went far beyond what is permissible under *Terry.* To conduct the type of search at issue in this case required a warrant, which police did not have. Therefore, the fruits of that illegal search must be suppressed. *Wong Sun v. United States,* 371 U.S. 471, 484, 83 S.Ct. 407, 415–16, 9 L.Ed.2d 441 (1963).

The trial court and the dissenting justices of this court would allow the seized evidence to be admissible under a "plain feel" exception to the fourth amendment warrant requirement. Neither this court

nor the United States Supreme Court ever has recognized such an exception and we decline to do so today.

The trial court found that when the officer felt the defendant's jacket pocket, he knew immediately he was feeling a plastic bag containing a lump of crack cocaine. The officer's "immediate" perception is especially remarkable because this lump weighed 0.2 grams and was no bigger than a marble. We are led to surmise that the officer's sense of touch must compare with that of the fabled princess who couldn't sleep when a pea was hidden beneath her pile of mattresses. But a close examination of the record reveals that like the precocious princess, the officer's "immediate" discovery in this case is fiction, not fact.

The officer testified that he was sure he had found crack cocaine only after (1) feeling a lump, (2) manipulating it with his fingers, and (3) sliding it within the defendant's pocket. That testimony belies any notion that he "immediately" knew what he had found. And this was not a case of some clever cross-examiner putting words in the officer's mouth; this was his own testimony on direct examination. Any doubts we might have about the trial court's findings are removed by another piece of information, also provided by the officer on direct examination. He testified that after observing the defendant engage in evasive behavior he directed his partner to stop the car so he could search the defendant for weapons and drugs.

■ It is true, as the dissent points out, that an improper motive does not invalidate an otherwise lawful search. *Horton v. California*, 496 U.S. 128, 110 S.Ct. 2301, 2308–10, 110 L.Ed.2d 112 (1990). But the officer's testimony that he intended to conduct a warrantless search for drugs, combined with his testimony about squeezing, sliding and otherwise manipulating the contents of the defendant's pocket, convince us that he set out to flaunt the limitations of *Terry*, and he succeeded. The results of such a search cannot be admitted into evidence. *Terry* would be rendered meaningless if such conduct were allowed. If given long enough, most police officers, or civilians for that matter, could pinch and squeeze and twist and pull and rub and otherwise manipulate a suspect's jacket pocket and figure out what is inside. But the fourth amendment doesn't permit that type of intrusive conduct without a warrant or probable cause to arrest, and police in this case had neither.

■ *Terry* permits a protective frisk for weapons. When the officer assures himself or herself that no weapon is present, the frisk is over. During the course of the frisk, if the officer feels an object that cannot possibly be a weapon, the officer is not privileged to poke around to determine what that object is; for purposes of a *Terry* analysis, it is enough that the object is not a weapon. *See State v. Alesso*, 328 N.W.2d 685, 688 (Minn.1982); *State v. Bitterman*, 304 Minn. 481, 486, 232 N.W.2d 91, 95 (1975); *State v. Ludtke*, 306 N.W.2d 111 (Minn.1981); 3 W. LaFave, *Search and Seizure* § 9.4(c) at 524 (2d ed. 1987).

The trial court held, and the dissent argues, that the officer's discovery should be admissible under a "plain feel" exception to the fourth amendment warrant requirement. The handful of courts that have applied a "plain feel" analysis have described it as an extension of the well-recognized "plain view" doctrine. *See State v. Washington*, 134 Wis.2d 108, 396 N.W.2d 156, 161–62 (1986); *United States v. Williams*, 822 F.2d 1174 (D.C.Cir.1987).[1]

■ Under plain view, if the sight of an object gives a police officer probable cause to believe the object is the fruit or instrumentality of a crime, it may be seized without a warrant, provided (1) police are legitimately in the position from which they view the object; (2) they have a lawful

---

1. Even if we recognized a "plain feel" exception, the search in this case would not qualify. The Circuit Court for the District of Columbia, in adopting "plain feel," anticipated the type of abuse that occurred in the present case, saying:

"[A]n officer who satisfies himself while conducting a *Terry* check that no weapon is present in a container is not free to continue to manipulate it in an attempt to discern the contents." *Williams*, 822 F.2d at 1184.

right of access to the object; and (3) the object's incriminating nature is immediately apparent. *Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); *Arizona v. Hicks,* 480 U.S. 321, 326, 107 S.Ct. 1149, 1153, 94 L.Ed.2d 347 (1987); *Horton,* 110 S.Ct. at 2308.

■ Because we do not believe the senses of sight and touch are equivalent, we decline to extend the plain view doctrine to the sense of touch. We reach this conclusion for two primary reasons. First, the sense of touch is inherently less immediate and less reliable than the sense of sight. For an excellent analysis on this point, *see State v. Broadnax,* 98 Wash.2d 289, 654 P.2d 96, 102 (1982). But even more important, the sense of touch is far more intrusive into the personal privacy that is at the core of the fourth amendment. It is one thing to see a bag of marijuana in a suspect's pocket, as occurred in *Ludtke.* It is quite something else to pinch, squeeze and rub the suspect's pocket to see what might be inside. Observing something that is held out to plain view is not a search at all. *Hicks,* 480 U.S. at 325, 107 S.Ct. at 1152–53. Physically touching a person cannot be considered anything but a search.

The dissent also argues that we already have tacitly adopted a "plain feel" rule in previous cases. We do not believe that is the proper interpretation of our reasoning in upholding warrantless searches in those cases. In *Bitterman,* the officer felt a hard, round object that he couldn't immediately rule out as a weapon, so he seized it, and it turned out to contain contraband. In *Alesso,* as the officer approached a stopped car, he saw the defendant quickly move his hand into a pocket. Fearing for his safety, the officer reached into the defendant's pocket and grabbed what proved to be a soft plastic bag containing contraband.

The distinction between those cases and the present one is obvious. In *Bitterman,* the officer felt a hard object that might or might not have been or contained a weapon. Under those circumstances, the law does not require him to wait until the bullets are flying to be sure. He may continue his frisk until his safety is assured. So long as his continued concern for his safety is reasonable, if the hard object turns out to be or contain contraband, that item may legitimately be seized. Likewise, the officer in *Alesso* acted reasonably in heading off any possibility the suspect was drawing a weapon. He instinctively reached for the source of the threat and removed it, only to discover it was a soft bag containing contraband. This court held that under those circumstances, where the suspect made a seemingly aggressive move, the officer was justified in protecting himself by grabbing whatever it was the suspect was trying to reach. The law does not require an officer to carefully feel the item s/he is grabbing when s/he reasonably believes s/he might be in danger.

That is where the present case differs from *Alesso* and *Bitterman.* There was never any possibility that the object in the defendant's pocket was a weapon, and there was no justification for grabbing it as a matter of self-protection because the defendant never made an aggressive move. With *Bitterman* and *Alesso* not applicable, the dissent relies on *Ludtke* for the proposition that there are circumstances in which it is proper for police to seize an item during a frisk, even if it could not be a weapon and the suspect does not act aggressively. *Ludtke* shows that such circumstances can exist, but it does not change the fact that those circumstances do not exist in this case. During a pat search in *Ludtke,* the officer came across a plastic bag on Ludtke's person and seized it. It later proved to contain 11 grams of cocaine, 55 times the amount at issue in this case. This court said because the officer had seen a small bag of marijuana in Ludtke's pocket, he was justified in seizing the larger bag. The court never said why, but when the gap in the analysis is filled, it becomes clear why *Ludtke* is inapplicable to the present case.

■ As *Katz* points out, warrantless searches and seizures are automatically invalid unless they fall under a recognized exception. Two exceptions are applicable here: (1) the protective weapons frisk in *Terry* and (2) a search incident to arrest.

*See Chimel v. California*, 395 U.S. 752, 763, 89 S.Ct. 2034, 2040, 23 L.Ed.2d 685 (1969). Professor LaFave cites *Ludtke* for the proposition that although finding a soft object will terminate the officer's right to continue a pat search, the item may be subject to seizure on other grounds. 3 W. LaFave, *Search and Seizure* § 9.4(c) at 524 (2d ed. 1987).

The *Ludtke* court did not specify what those other grounds were, but to be valid under *Katz* the other grounds have to be among the well-delineated exceptions to the fourth amendment. The *Ludtke* court acknowledged that soft objects cannot be seized under the rationale of a *Terry* protective search. And contrary to the dissent's assertion, *Ludtke* should not be viewed as a "plain feel" case. First, "plain feel" is not a well-delineated exception to the fourth amendment. The Supreme Court never has recognized it and neither have we. Second, there is nothing in *Ludtke*'s facts to suggest that the officer discerned any texture that indicated to him what the bag contained. He knew he had come across a plastic bag but he never suggested he could tell what was inside it by its feel.

The best explanation for *Ludtke* is that based on all the circumstances, the seizure of the soft bag was justified because it occurred during a search incident to arrest. Before the frisk, the officer had seen a bag of marijuana in Ludtke's pocket. He also had found marijuana during a search of Ludtke's companion. He also observed Ludtke reaching furtively into the back seat of the car. Then the frisk of Ludtke revealed a knife. All of those circumstances, plus the presence of a plastic bag containing *anything* on Ludtke's body gave police probable cause to believe that Ludtke was in possession of a controlled substance, justifying a full search.

The present case is clearly distinguishable. Here, there was no visual sighting of contraband, no presence of a knife, no effort by the defendant to hide anything and no accomplice in possession of contraband. In short, there was nothing about the defendant or his conduct that would give the police probable cause to arrest him and justify the extensive search that was performed. Even accepting the State's version of the facts, all the police had, as a matter of law, was *Terry*-type reasonable suspicion. That entitled the officer to stop the suspect and, based on a reasonable suspicion that he might be armed, conduct a carefully limited frisk for weapons.

Once it was apparent that the defendant had no weapon, *Terry* ceased to legitimize the officer's conduct. Any further intrusion into the defendant's privacy required a warrant or probable cause to arrest, and the officer had neither. Instead, he continued feeling the defendant's person until he found what he was looking for all along. That type of warrantless search is not permissible under the fourth amendment and its fruits must be suppressed.

The dissent notes that "law enforcement is not a game in which liberty triumphs whenever a policeman is defeated." We agree, but we are equally certain that liberty does triumph when the vitality of the fourth amendment is reaffirmed and an individual's basic right to be free from unreasonable searches and seizures is vindicated.

Affirmed.

COYNE, Justice (concurring in part, dissenting in part).

Because it seems to me that concluding that the "crack" cocaine discovered in the pocket of the defendant's jacket is the inadmissible product of an unreasonable search and seizure represents a departure from common sense and common experience, I respectfully dissent from that part of the decision which holds the trial court erred in admitting the contraband into evidence.

Officer Vernon Rose, the testifying police officer whose credibility as a witness the majority rather cavalierly questions, was in 1989 a 14–year veteran of the Minneapolis Police Department, with 11½ of those years spent on the north side, and he had recently had extensive experience working on cases involving narcotics and weapons. At 8:15 p.m. on November 9, 1989, Rose and his partner, in a marked

squad car, approached a notorious "crack house" in north Minneapolis. The building in question is a three-story 12–unit apartment building; it is not clear from the record how many of the units were then occupied. What is clear is that the building had become known, as Rose put it in his testimony at the pretrial suppression hearing, as a "crack house" that "goes 24 hours a day," a building which had been the subject of much complaint from the community, including "aldermanic complaint," and which had been raided by police on "numerous" occasions, with drugs and weapons (including knives, handguns and sawed-off shotguns) being seized.

Rose testified that as the squad car approached the crack house, he saw defendant emerge from the front entrance and walk toward the front sidewalk. When defendant looked up and made eye contact with the officer, defendant made an "abrupt * * * strange and suspicious" change in direction, apparently "just because he saw a police car." As defendant headed toward the alley instead of toward the street, the officers drove into the alley and stopped him. While subjecting defendant to a pat-down search of the outer clothing, here a thin nylon jacket, Rose felt a lump in defendant's jacket pocket. With the clothing still between his hands and the object, Rose "examined it with [his] fingers and it slid and it felt to be a lump of crack cocaine in cellophane." Rose had "felt [crack] before in clothing"—approximately 50 to 75 times—and "was absolutely sure that's what it was, or I would have left it there."

Up to that point Rose had been "just patting the outside." However, upon detecting the presence of the lump which he was certain was crack cocaine, he reached into the pocket and seized the substance, which indeed was crack cocaine (.20 grams), and arrested defendant. This prosecution followed.

Defendant moved to suppress the crack cocaine, challenging the basis for the stop and for the pat-down search for weapons, contending that Rose impermissibly used the pat-down search for weapons as an excuse to search for contraband, and claiming, finally, that the "plain view" seizure doctrine does not allow seizure of drugs or other contraband felt during a pat-down search for weapons. The trial court rejected each of these arguments. It determined that there was objective reasonable suspicion justifying the stop, that Rose was justified in conducting a pat-down search for weapons, and that Rose was justified in reaching into the pocket of defendant's jacket and seizing the crack cocaine after properly identifying it by feel during the pat-down search.

The majority, as a prelude to explaining why it agrees with the court of appeals that suppression is required, accepts the trial court's conclusions that the officers were justified in stopping defendant and that Rose was justified in conducting a pat-down search for weapons. I agree with both of these ultimate conclusions but offer a more detailed and somewhat different analysis of these issues to lay the ground work for my examination of the issue on which I formally dissent.

In *State v. Johnson*, 444 N.W.2d 824 (Minn.1989), we upheld a stop based upon a suspicious evasive act of driving: a person made a quick turn off the highway seconds after spotting a state trooper, then resumed driving on the highway within the next minute. We said, "While defendant's behavior may have been consistent with innocent behavior, it also reasonably caused the officer to suspect that defendant was deliberately trying to evade him." 444 N.W.2d at 827. Concluding that the officer had a "particular and objective basis for suspecting * * * criminal activity," we upheld the stop. *Id.*

Here Officer Rose saw not just an obviously evasive act by defendant but an obviously evasive act seconds after defendant left a notorious crack house and immediately on making eye contact with the officers, who were in a marked squad car. The stop was therefore clearly proper under *Johnson.*

In *Terry v. Ohio*, 392 U.S. 1, 23–27, 88 S.Ct. 1868, 1881–83, 20 L.Ed.2d 889 (1968), the United States Supreme Court held, for

the first time, that a police officer making an investigative stop may make a pat-down search of the suspect for weapons if the officer has a sufficient objective basis to believe that a pat-down search or frisk is necessary for self protection. "[I]n determining whether the officer acted reasonably in such circumstances, due weight must be given, not to his inchoate and unparticularized suspicion or 'hunch,' but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience." *Id.* at 27, 88 S.Ct. at 1883 (citation omitted).

This court has consistently followed the lead of the United States Supreme Court. For example, in *State v. Bitterman,* 304 Minn. 481, 232 N.W.2d 91 (1975), police patted down the defendant when he arrived at a residential heroin outlet which was then being searched by police pursuant to a search warrant. We upheld the limited search because of the fact that the defendant was a known user of heroin, a very dangerous drug, the fact that the defendant walked in on the police when they were searching the apartment for heroin, the fact that other known users were present, and the testimony of the officer, who had made approximately 3,000 narcotic arrests, that it was common for narcotics users to carry weapons. Similarly, in *State v. Payne,* 406 N.W.2d 511, 513 (Minn.1987), while upholding the pat-down search of the defendant and two others stopped at 3:00 a.m. in a high crime area for investigation of their involvement in an attempted break-in of a nearby residence moments earlier, we quoted Professor LaFave's statement that courts have been inclined to view the right to pat-down as automatic "whenever the suspect has been stopped * * * [for] a type of crime for which the offender would likely be armed * * * [including] such suspected offenses as robbery, burglary, rape, assault with weapons, homicide, and dealing in large quantities of narcotics." 406 N.W.2d at 513 (quoting 3 W. LaFave, *Search and Seizure* § 9.4(a) at 506 (1987)).

Ultimately the resolution of the question of the sufficiency of the basis for a protective pat-down search depends on the facts and circumstances of each individual case.

The test, as I have already indicated, is an objective test which looks only at whether there was an objective basis for a limited search, not into the officer's motivation. As we put it in *State v. Pleas,* 329 N.W.2d 329, 332 (Minn.1983):

> Under the 'objective theory' of probable cause which the United States Supreme Court has adopted, a search must be upheld, * * * if there was a valid ground for the search, even if the officers conducting the search based search on the wrong ground or had an improper motive. *See Scott v. United States,* 436 U.S. 128, 98 S.Ct. 1717, 56 L.Ed.2d 168 (1978), discussed in 1 W. LaFave, *Search and Seizure* § 1.2(g) (Supp.1982), and relied upon by this court in a number of cases, including *State v. Ludtke,* 306 N.W.2d 111 (Minn.1981), and *State v. Veigel,* 304 N.W.2d 900 (Minn. 1981). *The same rule applies to police investigatory practices short of arrest or search.*

(Emphasis added). Thus, the fact that Officer Rose candidly admitted that he hoped to find drugs in the pat-down search does not answer the question whether or not the search was justified. Instead, justification must be found in objective facts existing at the time of the search and articulated by the officer at the suppression hearing.

Here, although there was no objective basis for suspicion that defendant was dealing in large quantities of narcotics, Officer Rose was justified in suspecting that defendant was at least in possession of or using crack cocaine based on his observation of defendant's conduct—leaving a notorious crack house and abruptly turning and walking in the other direction upon seeing the officers in the marked squad car. The officer's reasonable suspicion that defendant was a crack user, together with the other circumstances—the fact that weapons had often been found during the several raids on the house, the fact the area was a high crime area, the fact defendant had acted in a furtive manner, and the fact the stop occurred in a dark alley— satisfy me that the trial court did not err in concluding that the officer was objectively

justified in patting down defendant for weapons.

In his testimony Officer Rose said that while patting down defendant's outer clothing, a thin nylon jacket, he felt a lump in the pocket. With the clothing still between his hands and the object, Rose "examined it with [his] fingers and it slid and it felt to be a lump of crack cocaine in cellophane." The majority concludes that by examining the lump in this fashion Rose somehow exceeded the permissible scope of a lawful pat-down search for weapons. The case law, however, supports my conclusion that the limited search was not excessive in scope, or more precisely, not too intrusive. Once again, a resort to *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), is in order. There Chief Justice Warren made clear the bright line dividing a limited pat-down search or frisk from a more intrusive full search of the person. A pat-down search or frisk is, as the Court put it, a *"careful* exploration of the outer surfaces of a person's clothing all over his or her body in an attempt to find weapons * * * *." *Id.* at 16, 88 S.Ct. at 1877 (emphasis added). As the Court made clear in the companion case of *Sibron v. New York,* 392 U.S. 40, 65, 88 S.Ct. 1889, 1904, 20 L.Ed.2d 917 (1968), if an officer invades the suspect's clothing and puts his or her hands into the suspect's pockets or otherwise reaches inside the outer clothing in order to examine an object, the search is no longer the limited search approved in *Terry.* As I said, Officer Rose testified here that he "examined [the lump] with [his] fingers and it slid and it felt to be a lump of crack cocaine in cellophane." This simple act of feeling the outline and shape of the lump was permissible under *Terry,* and it appears from Rose's testimony that, because of his extensive experience in discovering crack cocaine while patting down previous suspects, he was "absolutely sure" that the substance was crack cocaine "before" he reached into the pocket and

removed it. The trial court, as factfinder, credited Rose's testimony, expressly finding that Rose felt the crack cocaine as part of the pat-down search for weapons and that "[b]ased upon his training and experience, Officer Rose formed the opinion that the object in defendant's pocket was crack/cocaine and removed it."

The majority makes light of Rose's testimony on this point, comparing the officer to the fabled princess who felt the pea placed under a stack of mattresses. Although the majority then goes on to make it clear that its skepticism concerning Rose's credibility on this point is irrelevant to its ultimate conclusions, I believe that, in fairness to Officer Rose, the characterization of his testimony as fiction ought not to go unchallenged. Officer Rose was not trying to feel something hidden under a stack of mattresses; he was patting down a thin nylon jacket. Furthermore, as we have observed time and again, trained, experienced, intelligent police officers often detect and perceive criminal acts that might elude the rest of us. In any event, the trial court, the appropriate factfinder in our system, had the opportunity to observe the demeanor of Officer Rose and expressly credited his testimony on this point. In short, the finder of fact found the testimony to relate fact not fiction, and I can find no basis for rejecting the trial court's determination of credibility.

In order to seize an object without a warrant pursuant to the "plain view" seizure doctrine, the officer must be acting lawfully when he or she discovers the object. Further, it must be "immediately apparent" to the officer that the object is contraband, incriminating evidence or something else of a seizable nature—*i.e.,* the officer must have probable cause to believe the object is contraband or some other item subject to seizure. *Horton v. California,* 496 U.S. 128, 110 S.Ct. 2301, 2308, 110 L.Ed.2d 112 (1990).[1] The dis-

---

1. *Arizona v. Hicks,* 480 U.S. 321, 107 S.Ct. 1149, 94 L.Ed.2d 347 (1987), cited by the majority, is not on point. There the police, after coming upon a stereo in plain view during the course of a search of an apartment, picked up the stereo

in order to check the serial number and see if the stereo was stolen. The United States Supreme Court held that this movement of the stereo in order to view the serial number amounted to a seizure of the object and that

covery of the object need not be "inadvertent." *Id.* 110 S.Ct. at 2308–10. "The fact that an officer is interested in an item of evidence and fully expects to find it in the course of a search should not invalidate its seizure if the search is confined in area and duration by the terms of a warrant or a valid exception to the warrant requirement." *Id.* at 2309. Thus, the fact that Officer Rose was looking for or hoping or expecting to find crack cocaine during the pat-down search for weapons does not invalidate its seizure.

Defendant contends, however, and the majority of this court so holds, that since the crack cocaine was discovered by the sensation of touch during a pat-down search rather than by the sensation of sight—that is, by "plain feel" instead of "plain sight"—it was unjustified. In fact, despite the majority's reluctance to admit it, we have relied on the plain view seizure doctrine in a number of cases to uphold police conduct similar to that of Officer Rose. The leading such case is *State v. Ludtke,* 306 N.W.2d 111 (Minn.1981). A trooper stopped a car in which Ludtke was the passenger. When the driver could not produce identification papers, the trooper began to question Ludtke pursuant to standard procedures to verify the identification of the driver. While talking with Ludtke, the officer spotted a bag of marijuana sticking out of his shirt pocket. He seized this, then subjected the driver to a pat-down search for weapons and found more marijuana on him. He then subjected Ludtke to a pat-down search for weapons and found a knife and a bag of cocaine. With respect to the pat-down search of Ludtke and the seizure of the bag of cocaine, we said:

> We need not decide in this case whether the frisk of defendant's person could

be justified on the ground that the officer had probable cause to believe he would find more drugs on defendant's person. In this case, the frisk was clearly justifiable as a limited protective weapons search, * * *. *While the plastic bag of powder was soft and presumably did not feel like a weapon through the clothing, [the officer] was justified in reaching in and seizing it because he had already found a plastic bag of marijuana in the other shirt pocket and therefore could assume that this packet which he had felt also contained drugs.* After he removed the packet and saw that it indeed was suspected cocaine, he certainly was justified in seizing it and arresting defendant.

*Id.* at 113 (citations omitted) (emphasis added).[2]

The rule that emerges from *Ludtke* and similar cases is (a) if while patting down a suspect for weapons the officer feels an object and concludes that it is not a weapon, the officer *generally* may not reach in and remove the object but (b) if because of the feel of the object and other circumstances it is immediately apparent that the object, although not a weapon, is contraband, then the officer may seize it pursuant to the plain view seizure doctrine.

Professor LaFave cites *Ludtke* as the main authority for the following statement supporting the officer's conduct in this case:

> Assuming the object discovered in the pat-down does not feel like a weapon, this only means that a further search may not be justified under a *Terry* analysis. *There remains the possibility that the feel of the object, together with other suspicious circumstances, will amount to probable cause that the ob-*

---

absent probable cause this seizure was unjustified under the "plain view" seizure exception—*i.e.,* that the police could not seize the object in order to find probable cause for the seizure. The majority in this case argues that by feeling the shape and outline of the lump, Officer Rose exceeded the proper scope of a pat-down search without probable cause. I believe that the United States Supreme Court will continue to rely on the bright line of *Terry* as to the scope and degree of intrusion permitted in a pat-down

search for weapons and will not rely on *Hicks* in an attempt to modify the *Terry* rule.

**2.** *See also State v. Gobely,* 366 N.W.2d 600, 602–03 (Minn.), *cert. denied,* 474 U.S. 922, 106 S.Ct. 256, 88 L.Ed.2d 262 (1985); *State v. Alesso,* 328 N.W.2d 685, 689 (Minn.1982); *State v. Cavegn,* 294 N.W.2d 717, 722 (Minn.), *cert. denied,* 449 U.S. 1017, 101 S.Ct. 580, 66 L.Ed.2d 477 (1980).

*ject is contraband or some other item subject to seizure, in which case there may be a further search based upon that probable cause.*

3 W. LaFave, *Search and Seizure* § 9.4(c) at 524 (2d ed. 1987) (emphasis added).[3]

Other courts have reached the same conclusion. *See, e.g., United States v. Buchannon,* 878 F.2d 1065, 1066–67 (8th Cir. 1989) (upholding "plain feel" seizure), and *State v. Washington,* 134 Wis.2d 108, 396 N.W.2d 156, 161–62 (1986) (holding that plain view rule is not limited to seizure of items discovered in plain view but also includes items discovered through the use of other senses, including touch, and holding further that "[t]hough a pat-down provides no justification to search for evidence of a crime, it does not mean that the police must ignore evidence of a crime which is * * * discovered" during pat-down).

My opinion in this case is also supported fully by the decisions of the United States Supreme Court. For example, the Court has said that if, while conducting a so-called *Terry* "frisk" (protective weapons search) of an automobile, the officer "should, * * * discover contraband other than weapons, he clearly cannot be required to ignore the contraband, and the Fourth Amendment does not require its suppression in such circumstances." *Michigan v. Long,* 463 U.S. 1032, 1050, 103 S.Ct. 3469, 3481, 77 L.Ed.2d 1201 (1983) (citations omitted). *See also Texas v. Brown,* 460 U.S. 730, 739, 103 S.Ct. 1535, 1541–42, 75 L.Ed.2d 502 (1983), stating that plain view seizure doctrine "reflects the fact that requiring police to obtain a warrant once they have obtained *a first-hand perception* of contraband, stolen property, or incriminating evidence generally would be a 'needless inconvenience,'" * * *. (Emphasis added). (Citation omitted).

In summary, the officer did not violate defendant's fourth amendment rights in discovering and seizing the crack cocaine. The objective facts articulated by the offi-

cer at the pretrial suppression hearing justify not only the stop-to-investigate but also the protective pat-down search for weapons. As the trial court determined, the officer felt the crack cocaine during a properly conducted limited search and, given the feel of the object and all the relevant surrounding circumstances, had probable cause to believe that the object was seizable contraband. Pursuant to decisional authority of both the United States Supreme Court and this court, that first-hand perception justified reaching into the pocket of defendant's jacket, seizing the object, and arresting defendant for illegal possession of a controlled substance.

It is well to remind ourselves occasionally that "[l]aw enforcement is not a game in which liberty triumphs whenever the policeman is defeated." E. Barrett, *Exclusion of Evidence Obtained by Illegal Searches—A Comment on People v. Cahan,* 43 Calif.L.Rev. 565, 582 (1955). Certainly, evidence obtained as the result of any unreasonable search or seizure should be excluded. But a policeman should not be compelled to ignore what his senses—whether sight, sound, smell, taste, or touch—tell him in clear and unmistakable language.

KEITH, Chief Justice (dissenting).

I join Justice Coyne's dissent.

SIMONETT, Justice (dissenting).

I join Justice Coyne's dissent.

3. The majority states: "Professor LaFave cites *Ludtke* for the proposition that although finding a soft object will terminate the officer's right to continue a pat search, the item may be subject to seizure on other grounds." The quote from the treatise in the text of this dissent more accurately presents Professor LaFave's approving analysis of *Ludtke.*