[Cite as *State v. Mathis*, 2014-Ohio-3803.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| STATE OF OHIO | C.A. No.     27067 |
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| WALTER MATHIS, II | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No.     CR 13 03 0660 |

DECISION AND JOURNAL ENTRY

Dated: September 3, 2014

BELFANCE, Presiding Judge.

{¶1} Appellant, Walter F. Mathis, II, appeals from his convictions in the Summit County Court of Common Pleas. For the reasons set forth below, we affirm.

I.

{¶2} On March 4, 2013, Mr. Mathis drove to a Circle K and was stopped by Detective Todd Sinsley and other Street Narcotics Uniform Detail (SNUD) officers. Detective Sinsley conducted a pat-down of Mr. Mathis and discovered a rock-like object in Mr. Mathis' pocket, which was identified as crack cocaine. Mr. Mathis was arrested, and the officers discovered marijuana in a subsequent search of his vehicle.

{¶3} Mr. Mathis was charged with possession of cocaine, trafficking in cocaine, and possession of marijuana. He moved to suppress all evidence from the search of his person and his vehicle, and the court denied his motion. Mr. Mathis then pleaded no contest to possession of cocaine, trafficking in cocaine, and possession of marijuana. The court found Mr. Mathis guilty

and merged the possession and trafficking charges related to the cocaine. The court sentenced Mr. Mathis to 12 months in prison, fined him $150, and ordered the forfeiture of the $385.

{¶4} Mr. Mathis has appealed, raising one assignment of error for our review.

II.

ASSIGNMENT OF ERROR

THE TRIAL COURT ERRORED (SIC) IN FAILING TO GRANT MR. MATHIS, II'S MOTION TO SUPPRESS[.]

{¶5} In Mr. Mathis' sole assignment of error, he argues that the trial court erred in failing to suppress the evidence because (1) the detectives did not have reasonable suspicion to search him for weapons and (2) the search exceeded the boundaries of a patdown authorized by *Terry v. Ohio*, 392 U.S. 1 (1968). We address each of these issues in turn.

{¶6} Generally, "review of a motion to suppress presents a mixed question of law and fact." *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. Thus, we defer to the trial court's findings of fact if they are supported by competent, credible evidence and review its application of the law to the facts de novo. *State v. Metcalf*, 9th Dist. Summit No. 23600, 2007-Ohio-4001, ¶ 6.

{¶7} The Fourth Amendment to the United States Constitution and Article I, Section 14 of the Ohio Constitution protect individuals from unreasonable searches and seizures. Searches and seizures conducted outside the judicial process are per se unreasonable under the Fourth Amendment, subject to well-delineated exceptions. *Katz v. United States*, 389 U.S. 347, 357 (1967). The Supreme Court of the United States held in *Terry* that a police officer who, while observing a person's behavior, "reasonably * * * conclude[s] in light of his experience that criminal activity is afoot and that the person[] with whom he is dealing may be armed and presently dangerous[]" may pat down the outside of the person's clothes in order to determine if

he or she has any weapons. *Id.* at 30. The Supreme Court also noted that the search "must therefore be confined in scope to an intrusion reasonably designed to discover" weapons. *Id.* at 29.

{¶8} "[P]olice officers may seize nonthreatening contraband detected during a protective patdown search * * * so long as the officers' search stays within the bounds marked by *Terry*." *Minnesota v. Dickerson*, 508 U.S. 366, 373 (1993).

> If a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons; if the object is contraband, its warrantless seizure would be justified by the same practical considerations that inhere in the plain-view context.

*Id.* at 375-376. The officer must "have probable cause to believe that the item is contraband before seizing it[.]" *Id.* at 376. Probable cause "merely requires that the facts available to the officer would 'warrant a man of reasonable caution in the belief[]' * * * that certain items may be contraband * * * or useful as evidence of a crime[.]" *Texas v. Brown*, 460 U.S. 730, 742 (1983), quoting *Carroll v. United States*, 267 U.S. 132, 162 (1925).

{¶9} Detective Sinsley testified that he had 12 years of experience as a police officer, over 1 year of which was in the SNUD unit, and had been involved in between 300 and 400 investigations dealing with crack cocaine and heroin. He further testified that the SNUD unit received a tip that a black male with crack cocaine would soon be at a certain Circle K in an older maroon Chevrolet. Detective Sinsley was aware that the area around the Circle K was the site of numerous possession and trafficking arrests and arranged for surveillance of the Circle K parking lot. Detective Sinsley, along with other officers, observed Mr. Mathis enter the Circle K parking lot driving an older maroon Chevrolet about 20 minutes after the unit received the tip. The officers observed Mr. Mathis for a few minutes, during which Mr. Mathis never exited his

vehicle to use the fuel pumps or enter the store. Instead, Mr. Mathis sat in his vehicle nervously looking around, which Detective Sinsley testified was consistent with the behavior of an individual involved in a drug transaction. Detective Sinsley drove his vehicle behind Mr. Mathis' vehicle, blocking him in, and approached Mr. Mathis' vehicle.

{¶10} According to Detective Sinsley, when he approached Mr. Mathis, Mr. Mathis appeared very nervous; he was constantly looking around and was breathing rapidly. When Detective Sinsley asked Mr. Mathis half-a-minute into the encounter if he had any weapons, Mr. Mathis began to sweat. Detective Sinsley testified that, in his experience investigating narcotic-related activity, he was aware that guns and drugs often go together. Given that Mr. Mathis began to sweat only when being asked about whether he possessed weapons, the detective became concerned that Mr. Mathis might have a weapon. At that point, he asked Mr. Mathis to get out of the vehicle so he could pat him down.

{¶11} Detective Sinsely testified in detail as to how he conducts a protective patdown for weapons: "I grabbed his hands, [and] I began to do a pat-down, which is open hand, slide basically * * * along the body. * * * Just go along the body's contours[.] * * * If there's weapons in there you will feel it as you slide your open hand across the body." When Detective Sinsely was patting down Mr. Mathis with his open hand, he felt "a rock-like substance in [Mr. Mathis'] right coin pocket, watch pocket part of the jeans, the smaller pocket." Detective Sinsley felt the object with an open hand and did not manipulate it in order to determine what it was. *See Dickerson* at 378-379, quoting *State v. Dickerson*, 481 N.W.2d 840, 844 (Minn.1992) (Seizure of cocaine was unconstitutional when officer engaged in "'squeezing, sliding, and otherwise manipulating the contents of the defendant's pocket'" during a *Terry* patdown.). Detective Sinsley noted that people carrying drugs often conceal the drugs in the coin pocket. Based on his

training and experience, he believed what he felt was heroin or crack cocaine. On cross-examination, Detective Sinsley explained that the heroin commonly found in Akron was hard due to being mixed with other substances and being stored in "brick[]" shapes, giving it a rocky texture after it was cut from the brick. Mr. Mathis' counsel questioned Detective Sinsley as to why he had asked Mr. Mathis what was in the pocket, and Detective Sinsley replied that "[he] knew right away" what the object was but wanted to know if Mr. Mathis would admit that he was carrying drugs.

{¶12} Mr. Mathis suggests that the pat-down was improper because Detective Sinsley lacked reasonable, articulable suspicion to justify checking for weapons. *See Terry*, 392 U.S. at 29-30. We note that, at the suppression hearing, Mr. Mathis did not contest the propriety of the stop itself. Thus, our analysis is premised upon the police possessing reasonable articulable suspicion that Mr. Mathis was engaged or about to be engaged in criminal activity.[1] As noted above, the detective testified at length concerning his experience in the field. Detective Sinsley also testified that Mr. Mathis appeared to be very nervous and only started sweating after Detective Sinsley asked if he had any weapons. Under the totality of the circumstances as described above, Detective Sinsley had reasonable articulable, suspicion that Mr. Mathis was armed and, therefore, could conduct a pat-down over his outer clothing to check for weapons. *See Terry* at 29-30.

{¶13} Mr. Mathis also argues that Detective Sinsley lacked probable cause to seize the crack cocaine in his pocket because its contraband nature was not immediately apparent to the detective. Detective Sinsley testified that he had extensive narcotics experience and that he was

---

[1] In light of the concession below, the validity of the stop is not properly before us on appeal, and we express no opinion about its validity.

aware that the coin pocket was a common location for drugs to be kept.[2] He also had received a report that an African-American man driving an older model maroon Chevrolet would be arriving shortly at a certain Circle K, which Detective Sinsley was aware was a known drug-location and would be transporting cocaine. *See United States v. Caruthers*, 458 F.3d 459, 467 (6th Cir.2006) (Defendant's presence in a high-crime area does not create reasonable suspicion on its own, but is "relevant to the reasonable suspicion calculus[.]"). Mr. Mathis did arrive a short time after the tip at the stated Circle K driving an older maroon Chevrolet. Furthermore, Detective Sinsley observed Mr. Mathis for a number of minutes and Mr. Mathis did not attempt to enter the Circle K or use the gas pumps, instead sitting in his car in the parking lot while looking around, behavior which Detective Sinsley testified was consistent with an individual involved in a drug transaction. Thus, under the totality of the circumstances, we conclude that Detective Sinsley had probable cause to believe that the "rock-like substance" he felt, which he recognized as cocaine or heroin, was contraband and that such was immediately apparent to him without further manipulation of the object. Therefore, Detective Sinsley was entitled to remove it from Mr. Mathis' pocket. *Dickerson* at 376. *See also State v. Lawless*, 2d Dist. Montgomery No. 23126, 2009-Ohio-5405, ¶ 32.

{¶14} Accordingly, Mr. Mathis' sole assignment of error is overruled.

III.

{¶15} Mr. Mathis' assignment of error is overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

---

[2] Although Mr. Mathis suggests that the location of the object should not be considered, he has not cited any authority for that proposition, *see* App.R. 16(A)(7), and, in any case, the location of an object would be part of the totality of the circumstances used in a determination of probable cause.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

EVE V. BELFANCE
FOR THE COURT

HENSAL, J.
WHITMORE, J.
CONCUR.

APPEARANCES:

WILLIAM A. VASILIOU, II, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.