*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0180**

State of Minnesota,
Respondent,

vs.

Anthony Alan Early,
Appellant.

**Filed January 19, 2016
Affirmed
Halbrooks, Judge**

Hennepin County District Court
File No. 27-CR-13-25181

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Linda K. Jenny, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Richard Schmitz, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Ross, Presiding Judge; Halbrooks, Judge; and Chutich, Judge.

**U N P U B L I S H E D   O P I N I O N**

**HALBROOKS**, Judge

Appellant challenges the district court's denial of his motion to suppress evidence and argues that his case should be remanded for an additional hearing in order to

reconcile conflicting testimony. Because we find no error in the denial of appellant's motion to suppress, we affirm.

**FACTS**

At approximately 11:30 p.m. on August 3, 2013, AlliedBarton Security Services shift supervisor Cordarryl Thames was conducting regular video surveillance in downtown Minneapolis when he observed appellant Anthony Alan Early unbutton his pants and "fix himself up." Thames continued watching as Early pulled an object resembling a gun out of his girlfriend's purse and put it into the waistband of his pants. While observing Early, Thames received a phone call from a local, regular hot dog vendor who reported seeing a man fitting Early's description place a gun in his waistband. Thames radioed for off-duty police officer Steven Laux to assist him in confronting Early.

Thames and Laux approached Early in tandem. Thames testified that he had Early place his hands against the wall so that Laux could perform a *Terry* frisk for weapons. Laux frisked Early and felt the butt of a handgun in the front center of his waistband. Both Early and his girlfriend were placed in handcuffs for safety reasons as the bus stop was very busy. After Early was placed in handcuffs, the gun was removed, and Early and his girlfriend were taken to the security office for further questioning because Laux felt greatly outnumbered by the number of people on the street. There, Early consented to a search of his person and was asked whether he had a permit to carry the weapon. He did not have a permit, claiming he was holding it for his girlfriend. He was then arrested.

2

At the time of the arrest, Laux knew only that Early was in violation for possessing the gun without a permit. During a subsequent investigation, the state discovered that Early was convicted in 2002 of first-degree criminal sexual conduct. Based on that conviction, the state charged Early with one count of prohibited person in possession of a firearm. *See* Minn. Stat. § 624.713, subd. 1(2) (2012). Early moved to suppress all evidence concerning the firearm and all findings from the police before the arrest, arguing that the gun was the fruit of an illegal search incident to arrest.

The district court denied Early's motion, finding that Thames and Laux properly conducted a lawful *Terry* frisk based on actual observations by Thames and the vendor. Early agreed to a *Lothenbach* stipulated-facts procedure and validly waived his jury-trial rights. The district court convicted Early and sentenced him to 42 months in prison. Early now appeals the denial of his motion to suppress evidence.

## D E C I S I O N

### I.

"When reviewing pretrial orders on motions to suppress evidence, we may independently review the facts and determine, as a matter of law, whether the district court erred in suppressing—or not suppressing—the evidence." *State v. Harris*, 590 N.W.2d 90, 98 (Minn. 1999). We review the district court's findings of fact under a clearly erroneous standard, but legal determinations are reviewed de novo. *State v. Bourke*, 718 N.W.2d 922, 927 (Minn. 2006).

Early argues that the district court erred by denying his motion to suppress evidence of the gun after an illegal search incident to arrest, contending that (1) Laux was

3

required to independently corroborate the reports from Thames and the vendor and (2) Laux lacked probable cause to arrest Early when he handcuffed him at the bus stop.

The United States and Minnesota Constitutions prohibit unreasonable searches and seizures. U.S. Const. amend. IV; Minn. Const. art. I, § 10. Whether the constitution has been violated is dependent upon the specific police conduct at issue. *State v. Timberlake*, 744 N.W.2d 390, 393 (Minn. 2008). The conduct at issue here is an investigative stop conducted after suspicion arose of a concealed gun on public property. "Warrantless searches 'are *per se* unreasonable under the fourth amendment—subject only to a few specifically established and well-delineated exceptions.'" *State v. Dickerson*, 481 N.W.2d 840, 843 (Minn. 1992) (quoting *Katz v. United States*, 389 U.S. 347, 357, 88 S. Ct. 507-514 (1967)).

One such exception was recognized in *Terry v. Ohio*, which set forth the circumstances in which police may constitutionally "stop and frisk" suspicious persons without a warrant. 392 U.S. 1, 30-31, 88 S. Ct. 1868, 1884-85 (1968). Under *Terry*, police may "stop and frisk a person when (1) they have a reasonable, articulable suspicion that a suspect might be engaged in criminal activity and (2) the officer reasonably believes the suspect might be armed and dangerous." *Dickerson*, 481 N.W.2d at 843. Police may conduct an investigative *Terry* frisk if "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry*, 392 U.S. at 21, 88 S. Ct. at 1880.

Early first argues that Laux was required to independently corroborate reports of Early's suspicious behavior before arresting him and urges this court to employ the

4

constitutional requirements for an unreliable informant. But here, both Thames and the vendor were known, reliable informants. Thames was a security officer who, in the course of his professional duties, observed Early transfer a handgun from his girlfriend's purse to his waistband late at night in a busy part of town. Early concedes that "Thames would likely be considered a reliable source of information" but takes issue with the vendor's reliability. But "'[w]e presume that tips from private citizen informants are reliable,'" especially "'when informants give information about their identity so that the police can locate them if necessary.'" *Timberlake*, 744 N.W.2d at 394 (quoting *State v. Davis*, 732 N.W.2d 173, 182-83 (Minn. 2007)).

The vendor qualifies as a reliable informant because he was able to be located by police, which Laux did after the arrest. *See, e.g.*, *City of Minnetonka v. Shepherd*, 420 N.W.2d 887, 888, 890 (Minn. 1988) (holding that a tip from an informant identifying himself as 'a station attendant at the Q Petroleum Station in Minnetonka' who had 'observed an intoxicated driver leave the gas station' in a vehicle he identified by color and license plate was sufficient to give police reasonable suspicion that the driver was intoxicated). Thames knew the vendor because the vendor worked in the area Thames was charged with monitoring. Thames relayed this information to Laux, and Laux located and spoke with the vendor after the arrest. Laux also testified that he recognized the vendor as someone who regularly worked in the same location during the warmer months. For these reasons, Laux was not required to corroborate reports of Early before conducting his investigation.

Early also asserts that the gun should be suppressed because Laux did not have probable cause to stop him. Early argues that Thames and Laux had no reason to believe that he was involved in the commission of a crime, nor any reason to believe that he unlawfully possessed the gun. It is undisputed that Early was cooperative and compliant with Thames and Laux. He made no furtive movements and did not discard anything when he was approached. But Thames and Laux did not need probable cause to approach Early; they needed only reasonable suspicion. *Terry* permits a protective frisk for weapons. *Dickerson*, 481 N.W.2d at 844. "The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Terry*, 392 U.S. at 27, 88 S. Ct. at 1883. "The purpose of this limited search is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence . . . ." *Adams v. Williams*, 407 U.S. 143, 146, 92 S. Ct. 1921, 1923 (1972). When determining whether an officer reasonably conducted a pat-frisk, "due weight must be given . . . to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience." *Terry*, 392 U.S. at 27, 88 S. Ct. at 1883.

While some police actions can turn a *Terry* frisk into a de facto arrest, not every action does so. *State v. Flowers*, 734 N.W.2d 239, 254 n.16 (Minn. 2007) (providing examples of police actions not resulting in de facto arrests). "[A] person who is being detained temporarily is not free to leave during the period of detention, yet that does not [necessarily] convert the detention into an arrest." *State v. Moffatt*, 450 N.W.2d 116, 120

6

(Minn. 1990).  Even Early concedes that "briefly handcuffing a suspect while the police sort out a scene of an investigation does not per se transform an investigatory detention into an arrest."  *See State v. Munson*, 594 N.W.2d 128, 137 (Minn. 1999).

Laux testified that the particular area they responded to was a "very, very busy bus stop" and that "[a] lot of problems . . . occur there."  Because of this, he felt "greatly outnumbered."  So Laux handcuffed Early before he and Thames took him to the AlliedBarton office.  Once there, Laux continued the investigation because he "felt [he] was in a controlled environment, at least for [his] safety and everyone else's safety."  The district court agreed that the event happened "late at night in a busy and, unfortunately, dangerous part of town at that hour," concluding that Thames's actual observations of Early combined with a corroborated report by the vendor provided Thames and Laux with the reasonable suspicion necessary to perform an investigatory stop of Early.

Further investigation in the AlliedBarton office revealed that Early was unable to produce a permit to carry a gun.  It was at this point that Laux acquired probable cause to continue his investigation and arrest because, as the district court correctly noted, "it is illegal to carry a concealed weapon in public unless the individual has a permit; the permit is an affirmative defense to the offense."  *See State v. Williams*, 794 N.W.2d 867, 872 (Minn. 2011).  When the officer confiscated the weapon, he found a full magazine of rounds with one loaded in the chamber.  The district court found that the officers had reasonable suspicion to conclude that criminal activity was afoot and that Early was armed and dangerous based on Thames's first-hand account of Early's actions and the

7

vendor's first-hand account of the same. For these reasons, the district court's factual determinations are not clearly erroneous.

## II.

In the alternative, Early contends that this court must remand for further omnibus hearings because Thames and Laux "diverged in significant respects critical to the resolution of the disputed legal issue" of when Early was handcuffed. The state asserts that this issue was waived when Early agreed to a *Lothenbach* stipulated-facts procedure under Minn. R. Crim. P. 26.01, subd. 3, and argues that, even if Early had not stipulated to the testimony at trial, the conflicting testimony is not critically determinative.

Early correctly notes that the appeal falls under rule 26.01, subdivision 4, and not subdivision 3. This properly preserved the dispositive issue for appellate review, which the district court indicated by acknowledging the dispositive nature of the issue with counsel. Although Early is correct that the issue was properly preserved for appellate review, his argument nevertheless fails because the testimony is not critically determinative. The arrest did not occur at the moment Early contends it did—when his hands were placed against the wall while still at the bus stop. Early was handcuffed during the investigatory search because the officers had legitimate safety concerns, including reports that he was armed, Laux feeling outnumbered, and the possibility that the location itself was unsafe. Early was not arrested until he was in the AlliedBarton security office with Thames and Laux. For these reasons, we affirm the district court's decision.

**Affirmed.**