THE STATE OF OHIO *v.* WOODFORD.
THE STATE OF OHIO *v.* SMITH.
THE CITY OF SHAKER HEIGHTS *v.* WRIGHT.

(Nos. 702933, 702934, 702966, 702967, 702968 & 702969—
Decided February 4, 1971.)

Municipal Court of Shaker Heights.

*Mr. Louis Orkin,* for plaintiff.
*Mr. Charles Fleming,* for defendants Woodford and Smith.
*Mr. Alfred Nimrod,* for defendant Wright.

ROCKER, J.   Since all the above-entitled cases involve the subject of the lawfulness of a search and seizure, they will be treated in this single decision although the fact

situations in each may have peculiarities not present in the others. The court does not believe those peculiarities will be of significance with respect to the findings of law applicable to each of the cases, and, therefore, makes this decision dispositive of them all for the sake of practicality and economy of time.

In the *Woodford case* and *Smith case* the facts are essentially as follows:

A local bank had made a loan in the amount of $1679.94 to a Mildred Smith residing at 3677 Glencairn Road in the city of Shaker Heights, Ohio. The borrower turned over to the bank a certificate of title for a 1969 Cadillac as collateral for said loan and when payments on the loan became overdue and the bank was contemplating taking possession of the collateral under a chattel mortgage, its investigation of the title revealed irregularities as to the true ownership of the Cadillac. The bank referred the matter to the Shaker Heights Police Department for investigation and they found that the certificate of title presented to the bank was one issued on a 1962 Chevrolet and obviously the title presented to the bank was a forged instrument. A police detail was ordered to observe the Smith residence and found a Cadillac fitting the description in the forged title, standing in the rear of the premises bearing license plates EJ 7220, which, State of Ohio records revealed to have been issued to Mildred Smith, the alleged owner.

No attempt was made to enter upon the premises to examine the vehicle, and no search warrant was sought for such purpose. Instead, a police detail consisting of two policemen each in a separate police car lay in wait for an opportunity to see the Cadillac driven upon the public highways and then make an investigation to determine whether this was, in fact, the vehicle represented in the forged Certificate of Title, and appearing to have been stolen at an earlier date. On November 26, 1970 at approximately 6:15 p. m., the vehicle was driven out to the street and the detail immediately followed. After approximately one mile, the two police cars converged on the

Cadillac and forced it to stop. The driver, Marvin Smith, was informed that he had exceeded the prima facie 25 miles per hour speed limit by operating at a speed of 40 miles per hour. Alvin Woodford was a passenger in the car at the time and seated in the right, front seat. As the officer was speaking to Smith, he noticed a small plate now generally affixed by the motor car manufacturers on the dashboard in a manner making it readily discernible through the windshield and which bears the identification number of the vehicle. The officer's attention was particularly focused on the manner in which the plate was attached, giving the appearance of having been crudely positioned, unlike the usual manner when attached at the factory.

A radio check with the police dispatcher, confirmed the fact that the plate, known as a "VIN" or Vehicle Identification Number, did not belong on the Cadillac, and there was now further probable cause to believe that it was a stolen vehicle.

The occupants of the car were ordered to exit and were searched, no weapons were found on their persons. While they were still at the point at which they were stopped by the detail, another police officer appeared. He testified that he looked into the passenger side of the car and observed a "blue steel automatic" pistol under the passenger seat. He reached into the car and removed the gun.

Thereupon Woodford and Smith were placed under arrest and both charged with carying a concealed weapon. Smith was also charged with "Concealing a Stolen Vehicle" and Woodford was charged also with "Auto Trespass."

During interrogation on the motion to suppress the evidence, one of the officers in the police detail testified that he was ordered "not to consult the prosecutor nor the judge" regarding a search warrant, but instead "to find the property on public property, if possible."

Sometime later a thorough search of the vehicle was made by another police officer and by locating a so-called

"hidden serial number" it further confirmed the identity of the automobile as having been a stolen one.

Those, then, are the essential facts in the *Woodford* and *Smith cases* upon which defendants through counsel interpose their motion to suppress the evidence as having been obtained in violation of the Fourth Amendment of the Constitution.

The case of Richard Thomas Wright is not directly related to the foregoing cases in any manner other than for the fact that here, again, the arrest and search and seizure were made during the operation of a motor vehicle on the public highways of Shaker Heights, Ohio, and on the basis that the defendant, Wright, was violating a traffic law by operating a motor vehicle with the license plate of same attached with wire, rather than bolts or securely fastened in some other manner.

The arresting officer asked the driver for his registration certificate and driver's license, which he promptly produced. A radio call to police headquarters was made and no listing was found regarding any question as to ownership of the vehicle, a 1964 Pontiac.

The defendant, according to police testimony, was asked if the officer could check the serial number inside the doorpost of the car, and he agreed. In doing so, the officer noticed the handle and about 1″ of a knife blade under the driver's car seat. He removed it and found the blade to be 10″ in length and thus classified as a dangerous weapon by Ohio law.

The defendant was ordered to exit his automobile, was "patted down" and found to have no weapon on his person.

The officer then removed the defendant's hat from his head and found a single marijuana cirgarette concealed in the inside hat-band.

Wright was put under arrest and charged with Carrying a Concealed Weapon, to wit, a 10″ knife, and with possession of marijuana.

Considering first the cases of *Woodford* and *Smith*, the prosecution contends that the search and seizure of the Cadillac was justified on the basis that it was incident to

a lawful arrest for violation of the traffic ordinances of the city of Shaker Heights relative to speed.

The court is fully cognizant of numerous holdings to the effect that such a search and seizure is within the limits of the Fourth Amendment. It is also cognizant of the recognition by courts holding that violation of a traffic ordinance does not, in itself, justify a search of the offender's automobile. *Winkle* v. *Kropp* (E. D. Mich., 1968), 279 F. Supp. 532. Other cases have indicated concern by the courts over the potential use of the traffic arrest as a pretext to search a car for evidence of other offenses. *Gonzales* v. *United States* (5th Cir., 1968), 391 F. 2d 308.

The traffic arrest in the cases of *Smith* and *Woodford* strain the credulity of this court, especially when the testimony of the arresting officers was to the effect that they were under orders to ''to find the car on public property * * *.''

Had the alleged traffic violation been the only reason for stopping the vehicle, this court would find cause to suppress any evidence obtained by such search and seizure.

In this instance, however, the police had knowledge that the vehicle was a stolen one and had probable cause to believe that the person operating it was doing so without the owner's consent. This was sufficient justification in the opinion of this court, for the police to stop the operation of the vehicle and to search it as well as its occupants.

Although the manner in which the arrest of Smith and Woodford was made has all the appearances of a contrived arrest with respect to the traffic charge, the court does not believe this vitiates the discovery of incriminating evidence as indicated above. We must recognize that criminals are frequently capable of crafty designs in the execution of their criminal acts; shall we prohibit police from exercising the same type of craftiness or cleverness or, in fact, greater intelligence in apprehension of criminals?

It is quite obvious that apprehension of someone operating the vehicle would more readily lead to discovery

of the thief or thieves, than merely recovering possession of the property.

Whether the defendants are guilty or not guilty of the offenses with which they are charged is not before the court at this point in the proceedings. We face only the question now as to whether the arrest, the search and seizure of the defendant's and the vehicle were in violation of the Fourth Amendment of the Constitution—it is this court's opinion that they were not and the motions to suppress the evidence in the cases of *Smith* and *Woodford* are overruled.

Turning now to the situation in the case of Richard Thomas Wright. Here, again, we have an arrest for a minor traffic violation—license plates not properly affixed.

Under ordinary circumstances this would appear to be a harmless traffic code violation and it is so considered since usually the offense is punishable generally by only a small fine and an order to repair the defect within a short period of time.

Once more, we find police entitled to exercise their intelligence and training in determining that when license plates are so affixed, it is frequently done so in order to hastily remove a stolen automobile.

Admittedly having license plates affixed with wires rather than bolts is insufficient to support a charge of auto theft, but it is sufficient to give a police officer probable cause to stop the vehicle and make inquiry as to its status.

This court believes that such a "stop and frisk" comes within the application of *Terry* v. *Ohio*, 214 N. E. 2d 114. In that case, the United States Supreme Court held that a police officer whose suspicions were reasonably aroused as to the conduct of certain individuals that might lead to a criminal act, could "stop and frisk" such suspects to ascertain whether they were armed.

One can arouse suspicion of engaging in a criminal act, this court believes, within the confines of an automobile as well as by walking down the street under the circumstances shown in *Terry* v. *Ohio*; one of the ways this can occur is by operating the vehicle with license plates

affixed in a manner indicating haste as well as temporary fastening, or as in the cases of *Woodford* and *Smith* where the police had reasonable cause to believe the operator of the vehicle was in possession of stolen property, or the myriad of other situations which can and do arise daily where plain view of a motor vehicle gives reasonable cause to believe that it has been, is about to be, or is being used for a felonious purpose.

Once having apprehended Mr. Wright, this court is of the opinion that the officer not only possessed the right to search the defendant for weapons on his person, but an equal right to search his vehicle for the same purpose.

The court hastens to add that such a search for weapons within the vehicle would be unreasonable if it proceeded beyond areas in the vehicle readily accessible to the defendant or passengers accompanying him. It is not beyond the realm of possibility that after giving a citation to the driver for the simple traffic offense, he might return to his car and reach for a weapon.

It is, therefore, the opinion of the court that when the police officer inspected the inside of the car for the purpose of noting the serial number of it and then observed what appeared to be a knife, he was not conducting an unreasonable search, even had he not received consent to do so as in this case.

The court, however, does not come to the same conclusion with reference to the search of defendant's hat where a marijuana cigarette was discovered concealed within the inside hat-band.

The defendant had before the search of his hat already been "patted down" and found not to have any weapon on his person. The only weapon present, the 10″ knife, had already been placed beyond possible reach of the defendant.

The arresting officer stated that his reason for searching the hat was because he had previous experiences with prisoners secreting razor blades in their hats. We do not doubt that possibility, but cannot agree that possession of a usual type of razor blade would constitute possession

of a weapon; whether carried in one's hat or other apparel. If such were the case, on frequent occasions those of us who do not subscribe to the fashion of wearing beards, might find ourselves under arrest for carrying a package of "concealed weapons" on our way from the neighborhood drugstore or supermarket.

*Terry* v. *Ohio* was a most salutary step forward in protecting police and the public from injury by armed criminals, but we must recall the final words of that decision which contained the following expression, to wit: "* * * where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous; where in the course of investigating this behavior he identifies himself as a policeman and makes reasonable inquiries; and where nothing in the initial stages of the encounter serves to dispel his reasonable fear for his own or other's safety, he is entitled for the protection of himself and others in the area *to conduct a carefully limited search of the outer clothing of such persons* in an attempt to discover *weapons* which might be used to assault him. Such a search is a reasonable search under the Fourth Amendment, and any *weapons* seized may properly be introduced in evidence against the person from whom they were taken." (Emphasis added.)

The police officer, being armed to a far superior extent than the defendant, assuming that he had a small razor blade in his hat, did not represent a reasonable ground for fear for his "own or other's safety" in the contemplation of *Terry* v. *Ohio*.

It is, therefore, the holding of this court that the full search, rather than the "patting down" type of search, of defendant's hat was in violation of the Fourth Amendment and it is ordered that the evidence of defendant's possession of a marijuana cigarette be excluded from the evidence. The motion to suppress the evidence in all other respects is overruled.