STATE of Minnesota, Respondent,

v.

Timothy E. DICKERSON, Appellant.

No. C9–90–1780.

Court of Appeals of Minnesota.

April 30, 1991.

Review Granted July 24, 1991.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Michael Freeman, Hennepin County Atty., Beverly J. Wolfe, Asst. County Atty., Minneapolis, for respondent.

William Kennedy, Hennepin Cty. Public Defender, Peter W. Gorman, Asst. Public Defender, Minneapolis, for appellant.

Considered and decided by SCHUMACHER, P.J., and AMUNDSON and MULALLY,* JJ.

## OPINION

AMUNDSON, Judge.

Appellant Timothy Dickerson was charged with possession of a controlled substance in the fifth degree. He challenged the admission of the crack cocaine seized by a police officer. After an evidentiary hearing, the trial court held the stop and search of appellant was justified. The trial court also held seizure of the crack was valid based on the plain feel exception to the warrant requirement. We reverse.

## FACTS

On November 9, 1989, at approximately 8:15 p.m., Minneapolis police officers Vernon D. Rose and Bruce S. Johnson were

---

* Retired judge of the district court, acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 2.

patrolling the 1000 block of Morgan Avenue North in a marked patrol car. Rose is a 14-year police veteran and has participated in approximately 75 drug search warrant executions and 50–75 drug-related arrests. Rose described the 12–unit apartment building at 1030 Morgan Avenue North as a "known crack house." He previously executed several drug-related search warrants at the address. Drugs, guns, and knives were seized during the searches.

Rose saw appellant Timothy Dickerson leaving the Morgan Avenue apartment building. Rose neither recognized Dickerson nor identified which apartment Dickerson left. According to Rose, Dickerson walked down the stairs and continued toward the sidewalk. Dickerson then made eye contact with Rose, immediately turned around, and began walking toward a side alley. Rose described Dickerson's movement as "abrupt".

Rose decided to stop Dickerson based upon his knowledge of past activities at the Morgan Avenue apartments and Dickerson's abrupt direction change. Rose admitted he did not suspect Dickerson of criminal activity before Dickerson's direction change.

The officers pulled into the alley and stopped Dickerson. Dickerson made no evasive movements and did not attempt to conceal anything. Rose did not notice any suspicious bulges in Dickerson's clothing. Dickerson, in contrast, testified he left the building and turned immediately toward the sidewalk leading to an alley. He denied making eye contact with Rose or making an abrupt direction change. Dickerson indicated he did not see the squad car until it drove toward him in the alley.

After stopping Dickerson, Rose performed a pat search. He testified he searched Dickerson because other weapons had been seized from people at the Morgan Avenue apartments. He also indicated that in his experience, drug traffickers often possess weapons.

During the pat search, Rose felt a small lump in the front pocket of Dickerson's nylon jacket. He examined the lump through the nylon with his fingers. Later he claimed that based upon his experience he knew immediately the lump was crack cocaine tied in cellophane wrap. He seized the crack cocaine and arrested Dickerson. Rose never thought the lump was a weapon.

The trial court concluded Dickerson's departure from a "known crack house" and his evasive conduct provided reasonable suspicion he was engaged in criminal activity. The trial court also found the police officer's pat search was justified based upon prior seizure of weapons in the area and Dickerson's conduct. Finally, the trial court held the crack seizure valid based upon a "plain feel" exception to the warrant requirement.

## ISSUES

1. Was the stop justified?

2. Did the police have an articulable factual basis to believe Dickerson may have been armed and dangerous?

3. May the state justify the seizure under a "plain feel" exception to the warrant requirement?

4. May the state justify the seizure based upon a search incident to arrest theory not presented to the trial court?

## ANALYSIS

### I.

Whether the stop in this case was valid is purely a legal determination on given facts. Hence we analyze the testimony of the officer and determine whether his observations provided an adequate basis for the stop. *Berge v. Commissioner of Pub. Safety*, 374 N.W.2d 730, 732 (Minn.1985).

■ Dickerson contends the police performed an unconstitutional investigative stop. The state argues the police properly stopped Dickerson pursuant to *Terry v. Ohio*, 392 U.S. 1, 21, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968). The trial court upheld the stop's validity.

■ The fourth amendment protects the peoples' right against unreasonable

searches and seizures. U.S. Const. amend. IV. Seizures conducted without a warrant are per se unreasonable unless one of the exceptions to the warrant requirement is applicable. *See United States v. Place,* 462 U.S. 696, 701, 103 S.Ct. 2637, 2641, 77 L.Ed.2d 110 (1983).

One exception to the general warrant rule permits officers to stop and frisk an individual "for purposes of investigating possible criminal behavior even though there is no probable cause to make an arrest." *Terry,* 392 U.S. at 22, 88 S.Ct. at 1880. Both parties agree a fourth amendment seizure occurred, but dispute the stop's validity under *Terry.*

■ An investigatory stop and frisk may be performed when law enforcement officers have a reasonable suspicion criminal activity "may be afoot." *Id.* at 30, 88 S.Ct. at 1884. Reasonable suspicion requires "specific articulable facts which, taken with rational inference from those facts, reasonably warrant" the belief a crime is being or has been committed. *Id.* at 21, 88 S.Ct. at 1879–80. An officer's suspicion must be evaluated "not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement." *United States v. Cortez,* 449 U.S. 411, 419, 101 S.Ct. 690, 696, 66 L.Ed.2d 621 (1981). A trained police officer is entitled to draw inferences on the basis of "all of the circumstances * * * inferences and deductions that might well elude an untrained person." *State v. Johnson,* 444 N.W.2d 824, 826 (Minn.1989) (quoting *Cortez,* 449 U.S. at 418, 101 S.Ct. at 695).

We conclude Dickerson's stop was justified. First, evasive conduct alone has been held to justify an investigative stop. *Johnson,* 444 N.W.2d at 826–27. Dickerson's abrupt turn around after making eye contact with Rose plainly indicates evasive behavior. Further, Rose had personal knowledge of significant drug activity in the hallways of the Morgan Avenue apartment complex. Moreover, the stop was not based solely on Dickerson's presence in a high crime area. *See Brown v. Texas,* 443 U.S. 47, 52, 99 S.Ct. 2637, 2641, 61 L.Ed.2d 357 (1979). Under these circumstances, the trial court did not err in concluding the stop was constitutionally justified.

## II.

■ An officer may conduct a pat search of a lawfully stopped person if the officer has an objective, articulable basis for thinking the person may be armed and dangerous. *Wold v. State,* 430 N.W.2d 171, 175 (Minn.1988). However, if the true goal of the search is discovery or preservation of contraband rather than weapons, the intrusion is not authorized. *See United States v. Gonzalez,* 763 F.2d 1127, 1130 n. 1 (10th Cir.1985). Our inquiry therefore is whether Rose possessed a reasonable belief based on specific and articulable facts that Dickerson was dangerous and might gain immediate control of a weapon.

■ We conclude Rose had an articulable objective basis to perform a limited pat search. Rose previously seized drugs and weapons from the Morgan Avenue apartments. Rose also testified from experience that drug possessors often carry weapons. Dickerson's departure from a "known crack house," his evasive conduct, and Rose's experience with weapon-carrying drug traffickers provided specific and articulable facts to justify the pat search.

■ We conclude, however, the scope of the pat search exceeded constitutional parameters. The *Terry* analysis includes the principle that "a search which is reasonable at its inception may violate the Fourth Amendment by virtue of its intolerable intensity and scope." *Terry,* 392 U.S. at 17–18, 88 S.Ct. at 1878. A search's scope must be strictly tied to and justified by the circumstances which rendered its initiation permissible. *Id.* at 19, 88 S.Ct. at 1878.

*Terry* described the rationale and scope of a pat search:

The sole justification of the search * * * is the protection of the police officer and others nearby, and it must therefore be confined in scope to an intrusion reasonably designed to discover guns, knives, clubs, or other hidden instruments for the assault of the police officer.

*Id.* at 29, 88 S.Ct. at 1884. *Terry* upheld the search before it, but carefully noted that the officer:

> confined his search strictly to what was minimally necessary to learn whether the men were armed and to disarm them once he discovered the weapons. He did not conduct a general exploratory search for whatever evidence of criminal activity he might find.

*Id.* at 30, 88 S.Ct. at 1884.

In a companion case to *Terry*, the Supreme Court reversed a heroin possession conviction and emphasized the limited scope of a pat search. The Court noted:

> The search was not reasonably limited in scope to the accomplishment of the only goal which might conceivably have justified its inception—the protection of the officer by disarming a potentially dangerous man. Such a search violates the guaranty of the Fourth Amendment, which protects the sanctity of the person against unreasonable intrusions on the part of all government agents.

*Sibron v. New York*, 392 U.S. 40, 65–66, 88 S.Ct. 1889, 1904, 20 L.Ed.2d 917 (1968).

█ We read *Terry* and *Sibron* as limiting pat searches to a careful exploration of the outer surfaces of the person's clothing until and unless the officer discovers specific and articulable facts reasonably supporting the suspicion that the defendant is armed and dangerous. Absent probable cause to arrest, the officer may exceed the scope of a limited pat search and reach into the suspect's clothing only for the purpose of recovering an object thought to be a weapon.

The Minnesota Supreme Court has also emphasized the limited scope of a pat search.

> In a typical pat-down frisk, only certain "tactile sensations produced by the pat-down will justify a further intrusion into the clothing" to seize the object and the "better view" is that "a search is not permissible when the object felt is soft in nature."

*State v. Alesso*, 328 N.W.2d 685, 688 (Minn. 1982) (quoting 3 W. LaFave, *Search and Seizure*, § 9.4(c) at 130 (1978)); *e.g.*, *State v. Bitterman*, 304 Minn. 481, 486, 232 N.W.2d 91, 94 (1975) (seizure of prescription bottle, which was a hard object that, when felt through the clothes, the officer thought might be a weapon was justified); *State v. Gannaway*, 291 Minn. 391, 394, 191 N.W.2d 555, 557 (1971) (pipe reasonably thought to be a weapon). *Accord State v. Collins*, 139 Ariz. 434, 438, 679 P.2d 80, 84 (App.1983) (officer may seize only weapons during "stop and frisk" weapons search, not any and all suspicious items discovered); *People v. Collins*, 1 Cal.3d 658, 664, 83 Cal.Rptr. 179, 182, 463 P.2d 403, 406 (1970) (officer exceeded scope of pat down weapon search where no articulable facts indicated suspect was armed with an atypical weapon similar to the object felt); *People v. McCarty*, 11 Ill.App.3d 421, 422, 296 N.E.2d 862, 863 (1973) (officer had no right to remove a soft plastic bag from defendant's coat pocket, after determining pocket did not contain a weapon); *State v. Rhodes*, 788 P.2d 1380, 1381 (Okl. Crim.App.1990) (officer may not seize object felt in pat down search unless it reasonably resembles a weapon); *State v. Hobart*, 94 Wash.2d 437, 447, 617 P.2d 429, 434 (1980) (pat down search was illegal where its scope was not strictly limited to a search for weapons, but included an exploration the defendant might be in possession of narcotics).

We hold that the scope of a pat search must be strictly limited to a search for weapons. Absent probable cause for further intrusion, an officer performing a proper *Terry* frisk may not seize an object unless it reasonably resembles a weapon. Consequently, the trial court erred in concluding Rose's seizure of the cocaine was constitutional.

### III.

█ The trial court concluded the plain feel exception to the traditional warrant requirement justified the seizure of the cocaine. We disagree, and in so doing, decline to adopt the plain feel exception in Minnesota.

Courts that have addressed the "plain feel" issue have treated it as a corollary to

the plain view doctrine. *See United States v. Williams,* 822 F.2d 1174, 1181–83 (D.C. Cir.1987); *United States v. Norman,* 701 F.2d 295 (4th Cir.) *cert. denied* 464 U.S. 820, 104 S.Ct. 82, 78 L.Ed.2d 92 (1983); *United States v. Russell,* 655 F.2d 1261 (D.C.Cir.1981), *vacated and modified in part,* 670 F.2d 323 (D.C.Cir.), *cert. denied,* 457 U.S. 1108, 102 S.Ct. 2909, 73 L.Ed.2d 1317 (1982); *United States v. Ocampo,* 650 F.2d 421, 429 (2d Cir.1981); *United States v. Portillo,* 633 F.2d 1313, 1320 (9th Cir. 1980), *cert. denied,* 450 U.S. 1043, 101 S.Ct. 1764, 68 L.Ed.2d 241 (1981); *United States v. Diaz,* 577 F.2d 821, 824 (2d Cir.1978).

Courts invoke the plain view exception when an officer engaged in a lawful search views an object which he or she had probable cause to believe was contraband. The plain view exception is justified because apprehension of an object already in plain view of an officer lawfully present does not infringe any reasonable expectation of privacy, and "its exposure thus is not a search within the meaning of the Fourth Amendment." *United States v. Williams,* 822 F.2d 1174, 1182 (D.C.Cir.1987).

We decline to adopt a plain feel exception to the warrant requirement. We believe the proper analysis in this case must focus upon the limited purpose associated with a pat search. We conclude the search of Dickerson exceeded constitutional parameters and we therefore reverse.

## IV.

The state argues for the first time on appeal that the search was justified as incident to an arrest. A search is valid as incident to arrest even if conducted before the actual arrest provided (1) the arrest and the search are substantially contemporaneous; and (2) probable cause to arrest existed before the search. *Rawlings v. Kentucky,* 448 U.S. 98, 111, 100 S.Ct. 2556, 2564, 65 L.Ed.2d 633 (1980); *United States v. Costello,* 604 F.2d 589, 590–91 (8th Cir.1979).

The state, however, did not argue this theory to the trial court. The record indicates the state argued only a "plain feel" analysis. At oral argument, the state admitted it failed to present the search incident to arrest theory to the trial court. Parties cannot raise for the first time on appeal issues not presented to the trial court. *State v. Sorenson,* 441 N.W.2d 455, 457 (Minn.1989).

### DECISION

The trial court did not err by concluding the police officers properly stopped appellant. However, the pat search of appellant by the police officer exceeded constitutional parameters. We decline to adopt the plain feel exception to the warrant requirement.

Reversed.