**STATE of Minnesota, Plaintiff,**

v.

**Christopher Kurt CROOK, Defendant.**

**No. C6–91–2217.**

Court of Appeals of Minnesota.

May 26, 1992.

Review Denied Aug. 4, 1992.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Michael O. Freeman, Hennepin Co. Atty., Lisa Berg, James K. Appleby, Asst. Co. Atty., Minneapolis, for plaintiff.

John J. Leunig, Meshbesher Birrell & Dunlap, Ltd., Minneapolis, for defendant.

Considered and decided by AMUNDSON, P.J., and PETERSON and STONE *, JJ.

## OPINION

AMUNDSON, Judge.

This appeal is a certified question as to the constitutionality of a police officer's removal of a baseball cap from a homicide suspect's head without a prior pat-search of the cap and first having felt what was reasonably believed to be a weapon.

## FACTS

On June 6, 1991, Minneapolis Police Officers Bautista and Beauchamp were on routine patrol when they saw a vehicle they

---

* Retired judge of the district court, acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 2.

believed to be wanted by the FBI in relation to a California homicide case. The officers had information that the homicide suspects were driving a dark blue Camaro with a Minnesota license plate, 947 FRY, which had been observed in the Minneapolis area. When the officers saw appellant, he was driving a dark blue Camaro with a Minnesota license plate, 980 FYR.

The officers followed the vehicle into an alley where it stopped behind a residence. As appellant saw the police officers, he exited his vehicle. The officers detained appellant at the rear of his vehicle.

The officers told appellant they were investigating a possible homicide. They told him that if he was not the person involved, they would just check him out and be on their way. They turned appellant around and told him to place his hands on his vehicle. At that point, Officer Bautista conducted a search for weapons, beginning with the removal of appellant's baseball cap from his head.

As Bautista removed the baseball cap, he looked inside and placed it on top of appellant's vehicle. As he placed the cap on the vehicle's roof, a small marijuana cigarette fell out from under the front brim of the cap. No weapons were found on appellant.

After the search, Bautista picked up the marijuana cigarette which was still inside the cap and showed it to appellant. While Officer Beauchamp interviewed appellant, Bautista removed the interior brim of the band of the cap and found a plastic wrap containing what appeared to be two rocks of crack cocaine. The officers arrested appellant for possession of a controlled substance.

At the *Rasmussen* hearing, appellant moved to suppress evidence of the controlled substances; the trial court denied defendant's suppression motion. It certified the question whether it was constitutional to remove appellant's baseball cap without first conducting a pat search of the cap's outer surface and feeling what was reasonably believed to be a weapon.

## ISSUE

Was it constitutionally permissible for the police officer to remove from a homicide suspect a baseball cap without first having conducted a "pat-search" of that item of clothing and without first having felt what he reasonably believed to be a weapon?

## ANALYSIS

■ Generally, a pretrial order denying a motion to suppress evidence is not an appealable order. *State v. Childs,* 269 N.W.2d 25, 26 n. 1 (Minn.1978). The trial court, however, is authorized to certify a question of law which, in the opinion of the judge, is important or doubtful. Minn. R.Crim.P. 28.03. The certification procedure is not to be a substitute for appeal. Nevertheless, this court may grant discretionary review where the parties have briefed the case, the record is adequately developed, and the evidence in question is important to the prosecution's case. *Id.* In this case, the evidence is important to the case, the case is fully briefed, and there is a well-documented record. *See State v. Metz,* 422 N.W.2d 754, 756 (Minn.App.1988) (trial court's denial of motion to suppress evidence obtained in a warrantless search of a storage unit was certified to this court and reviewed because the issue was important, fully briefed, and documented by a well-developed record). Accordingly, appeal of the pretrial order in this case is proper. The certified question is a purely legal issue and this court is not bound by the decision of the trial court. *First Trust Co. v. Leibman,* 445 N.W.2d 547, 549 (Minn.1989).

### Scope of Pat Search

■ Evidence may not be admitted at trial if it was discovered by means of a search and seizure which was not reasonable in scope. *Terry v. Ohio,* 392 U.S. 1, 29, 88 S.Ct. 1868, 1884, 20 L.Ed.2d 889 (1968). When the search's sole justification is protection of the police officer, the scope of the search must be reasonably designed to discover guns, knives, clubs, or other hidden instruments for the assault of the

police officer. *Id.* The police officer is entitled to

> conduct a *carefully limited search* of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him.

*Id.* at 30, 88 S.Ct. at 1885 (emphasis added).

■ The facts surrounding the reasonableness of a particular search or seizure are reviewed against an objective standard as to whether the facts available to the officer at the time of the search would warrant a person of reasonable caution to believe that the action taken was appropriate. *Id.* at 21–22, 88 S.Ct. at 1880; *see Wold v. State*, 430 N.W.2d 171, 175 (Minn. 1988). The inquiry therefore is whether a reasonably prudent person in the specific circumstances would believe that his or her safety was in danger. *Terry*, 392 U.S. at 27, 88 S.Ct. at 1883. Whether the officer has acted reasonably depends on the "specific reasonable inferences" which the officer is entitled to draw from the facts in light of his or her experience. *Id.; see State v. Fox*, 283 Minn. 176, 179–80, 168 N.W.2d 260, 262 (1969). Whether a police officer's search is appropriate depends on the specific facts of each case. *Terry*, 392 U.S. at 30, 88 S.Ct. at 1884.

■ Minnesota courts have interpreted *Terry* as limiting pat searches to a careful exploration of the outer areas of a person's clothing unless the officer feels an object thought to be a weapon and then reaches into the suspect's clothing to recover that object. *See State v. Alesso*, 328 N.W.2d 685, 688 (Minn.1982); *State v. Dickerson*, 469 N.W.2d 462, 466 (Minn.App.1991), *aff'd*, 481 N.W.2d 840 (Minn.1992). The Minnesota Supreme Court has held that requiring a defendant to unzip his jacket and open the paper bag which fell out of that jacket is outside the parameters of a *Terry* pat search. *See State v. Cavegn*, 294 N.W.2d 717, 722 (Minn.), *cert. denied*, 449 U.S. 1017, 101 S.Ct. 580, 66 L.Ed.2d 477 (1980).

Recently, the supreme court held that a police officer exceeded the scope of a *Terry* pat search when he felt a marble size object in the defendant's pocket which could not have been a weapon but continued to squeeze, slide, and manipulate the object so as to identify it. *State v. Dickerson*, 481 N.W.2d 840, 844 (Minn.1992). The court concluded:

> [T]here was no visual sighting of contraband, no presence of a knife, no effort by the defendant to hide anything and no accomplice in possession of contraband. In short, there was nothing about the defendant or his conduct that would give the police probable cause to arrest him and justify the extensive search that was performed. Even accepting the State's version of the facts, all the police had, as a matter of law, was *Terry*-type reasonable suspicion. That entitled the officer to stop the suspect and, based on a reasonable suspicion that he might be armed, conduct a *carefully limited frisk for weapons.*

*Id.* at 846 (emphasis added).

■ In this case, appellant's baseball cap was removed from his head at the beginning of the *Terry* pat search. Officer Bautista looked inside the cap when removing it and placed it on the roof of appellant's vehicle. In his investigation report, Bautista stated he removed the cap "knowing that some persons may attempt to hide narcotics in the brim of their hats." At the *Rasmussen* hearing, Bautista testified he removed the cap "knowing full well that people either hide drugs or small weapons such as knives, injection equipment, or even small guns in their hats." Items such as razor blades, fingernail files, bobby pins, and extended paper clips, can be hidden in the brim of a hat and used as weapons. He stated that these items would not be felt during a pat search, so the police generally just remove a hat from a person's body.

We hold the removal of appellant's cap from his head as an alternative to a pat search of the cap went beyond a *Terry* reasonable protective weapons search. There was no visual sighting of contraband, no presence of weapons, and defendant did not try to hide anything. The officer could have reasonably expected to feel a weapon such as a gun or knife through the material of the cap. It is also

reasonable to conclude that a weapon such as a razor blade hidden in the cap would not present harm or danger to a police officer armed with a gun.[1] We believe that a cap or hat should not be removed from a person's head during a *Terry* protective weapons search unless a prior pat search of the cap or hat reveals a weapon. *See State v. Gannaway*, 291 Minn. 391, 393, 191 N.W.2d 555, 557 (1971) (inside of pocket is not within scope of weapons search where there is no palpable indication of weapon in pocket).

Because we conclude the officer should have pat searched appellant's baseball cap before removing it from his head, we need not address appellant's arguments that the removal of the baseball cap was based on a hunch and that even if there had been a pat search, no weapon would have been discovered to entitle the officer to a further search of the cap.

## DECISION

We hold that the removal of the baseball cap from defendant's head during the pat search was beyond the scope of a *Terry* protective weapons search.

Certified question answered in the negative.

---

1. In *State v. Woodford*, 269 N.E.2d 143 (Ohio 1971), a police officer ordered the defendant to exit his vehicle, pat searched him but found no weapon on his person. Following the pat search, the police officer removed the defendant's hat from his head and found a marijuana cigarette concealed inside the hat band. *Id.* at 146. The officer's reason for searching the hat was because of his prior experiences with prisoners hiding razor blades in their hats. *Id.* at 148. The municipal court stated that the possession of a usual type of razor blade would not constitute possession of a weapon whether carried in a person's hat or other clothing. The court reaffirmed *Terry* in that a search is to be limited to the outer clothing. *Id.* The officer being armed to a greater extent than the defendant did not show a reasonable ground for fear for his own safety pursuant to *Terry*. The court concluded that the full search rather than a pat search of the defendant's hat violated the fourth amendment and the court ordered the suppression of the evidence of the marijuana cigarette. *Id.*