**[J-6-2021] [MO: Mundy, J.]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**EASTERN DISTRICT**

| | | |
|---|---|---|
| IN THE INTEREST OF: T.W., A MINOR | : | No. 22 EAP 2020 |
| APPEAL OF : T.W. | : | |
| | : | Appeal from the Judgment of |
| | : | Superior Court entered on February |
| | : | 4, 2020 at No. 2390 EDA 2018 |
| | : | affirming the Order entered on July |
| | : | 10, 2018 in the Court of Common |
| | : | Pleas of Philadelphia County, |
| | : | Juvenile Division, at No. CP-51-JV- |
| | : | 0001105-2018 |
| | : | |
| | : | ARGUED:  March 9, 2021 |

**CONCURRING AND DISSENTING OPINION**

**JUSTICE DONOHUE**                    **DECIDED:  October 20, 2021**

All members of the Court agree that an officer, following a lawful pat-down, is entitled to remove an object based on reasonable suspicion that the object is a weapon. We disagree on what the officer can do when the pat-down leaves him or her in a state of uncertainty as to whether the object is a weapon.  I join the rationale of Justice Wecht's concurring and dissenting opinion, as I agree that the Fourth Amendment demands that an officer use the least intrusive means to resolve any uncertainty.  Because Officer Grant skipped available alternatives and immediately proceeded to remove the object, T.W. is entitled to suppression as a matter of law.  I write separately to express my view that the evidentiary record fails to support the Majority's conclusion that, after the initial frisk, the Commonwealth offered sufficient facts to establish that Officer Grant reasonably suspected the item was a weapon as contemplated by *Terry v. Ohio*, 392 U.S. 1 (1968).

Thus, even if I were to agree that the Fourth Amendment always permits an officer to skip less intrusive intermediate steps, on these facts I find that the Commonwealth failed to meet its burden. Similarly, I would hold that the officer could not employ the intermediate steps discussed by Justice Wecht on this record.[1]

**I.**

<u>*Terry* supplies the standard for reasonableness</u>

"The Fourth Amendment is not, of course, a guarantee against *all* searches and seizures, but only against *unreasonable* searches and seizures." *United States v. Sharpe*, 470 U.S. 675, 682 (1985). In the normal Fourth Amendment dispute, "the permissibility of a particular law enforcement practice is judged by balancing its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests." *Delaware v. Prouse*, 440 U.S. 648, 654 (1979).

---

[1] The Majority opines that the discussion of less intrusive means was not preserved for review. I agree with Justices Wecht and Dougherty that the issue is subsumed within our grant of allocatur. The basis for T.W.'s motion to suppress was that the Fourth Amendment demands suppression, and I fail to see how the Majority can conclude that the Fourth Amendment permitted Officer Grant to immediately seize the object without examining whether lesser steps were required. While T.W. argued that the standard is probable cause, the salient point is that a warrant (i.e., a showing of probable cause) would indeed be required unless some exception applied. We cannot hold that an exception to the warrant requirement applies without addressing the possibility of less intrusive acts.

Simultaneously, while I agree with Justice Wecht's conclusion that the Fourth Amendment requires an officer to employ the least intrusive means, I find that both Justices Dougherty and Wecht veer off course by discussing how the Fourth Amendment analysis would play out under hypothetical scenarios. For instance, Justice Dougherty posits that a frisk "occur[ring] in the winter" with the suspect "wearing bulky clothing" may make it difficult to do anything beyond a pat-down. Concurring Op. at 22. But that is not this case. We are deciding this case based on this record, and as explained elsewhere within this opinion I find that the Commonwealth failed to meet its burden.

This case flows from a particular Fourth Amendment issue: a *Terry* pat-down. We are therefore not deciding what is reasonable in the abstract but rather within the context of a *Terry* frisk, where the High Court has already conducted the balancing.[2] Whereas Justice Dougherty appears to decide the question of reasonableness as if we write on a blank slate, I am mindful of the High Court's statement that "[t]he *Terry* case created an exception to the requirement of probable cause, an exception whose 'narrow scope' this Court 'has been careful to maintain.'" *Ybarra v. Illinois*, 444 U.S. 85, 93 (1979) (citations omitted).

The claim that "reasonableness is the touchstone of every Fourth Amendment assessment, including those arising in the *Terry* context[,]" Concurring Op. at 8 (emphases omitted), does not adequately account for *Dunaway v. New York*, 442 U.S. 200 (1979), and its recognition that "the [*Terry*] Court treated the stop-and-frisk intrusion as a *sui generis* 'rubric of police conduct[.]' " *Id.* at 209 (citing *Terry*, 392 U.S. at 20). The *Terry* decision acknowledged that some police conduct, like the pat-down conducted here, "historically has not been, and as a practical matter could not be, subjected to the warrant procedure." *Terry*, 392 U.S. at 20. The *Dunaway* Court further recognized that "*Terry* departed from traditional Fourth Amendment analysis in two respects." *Dunaway*, 442 U.S. at 209–10. The first was that *Terry* "defined a special category of Fourth Amendment 'seizures' so substantially less intrusive than arrests" which called for a

---

[2] Justice Dougherty's contention that I am making an "emphatic assertion" to the effect that reasonableness is not the touchstone of Fourth Amendment assessments misconstrues my position. Reasonableness is indeed central to every Fourth Amendment balancing analysis, but its role in those balancing analyses must be assessed not in the abstract but rather within the context of a *Terry* frisk. In the context of a *Terry* frisk, the Supreme Court has already conducted the balancing of the interests of the parties involved.

balancing test. *Id.* at 210. The second departure was in applying that balancing test, which "led the Court to approve this narrowly defined less intrusive seizure on grounds less rigorous than probable cause, but only for the purpose of a pat-down for weapons." *Id.*

I therefore do not believe we are free to simply ask what is "reasonable" as if *Terry* did not exist.[3] It is true that the *Terry* Court "did not expressly address what is reasonable or direct what is required when an officer identifies an object he or she cannot conclude is not a weapon[,]" Concurring Op. at 8, but this overlooks that the *Terry* Court decided only that a pat-down for weapons was authorized upon reasonable suspicion that the individual is armed and dangerous. The *Terry* Court easily could have said that an officer may grab any and all objects detected during that pat-down on the theory that anything "could be" a weapon. The fact that it did not squarely address that question does not justify ignoring its narrow scope nor does it justify reverting to general Fourth Amendment

---

[3] I do not agree that *Commonwealth v. Revere*, 888 A.2d 694 (Pa. 2005), establishes that a generic "reasonableness" inquiry governs for all *Terry* questions. That case involved officers ordering two individuals lawfully detained for an investigative detention to enter the backseat of a police vehicle. Revere claimed that the order and subsequent short transport transformed the seizure into an arrest requiring probable cause. This Court indeed determined that the police conduct must be assessed for reasonableness, but explicitly held that the presence of exigent circumstances, namely the fact that the officers feared their fellow officers needed immediate help based on their screaming, justified that result. *Id.* at 707.

Justice Dougherty does not argue that the potential presence of a weapon constituted an exigent circumstance because that would, of course, simply swallow the *Terry* exception. Additionally, Chief Justice Cappy filed a concurrence in *Revere* noting that the Court assumed the presence of exigent circumstances for purposes of appeal and cautioned that courts must determine if "the officers' conduct was a reasonably necessary response to the exigent circumstances based upon the totality of the circumstances." *Id.* at 709 (Cappy, C.J., concurring). His opinion agreed that courts "should not engage in unrealistic second-guessing[,]" but also stated that "[c]onsideration of reasonably less intrusive alternatives should be part of the relevant inquiry[.]" *Id.* at n.2.

standards. The *Terry* balancing test logically applies both to what *Terry* clearly allows–a pat-down for weapons–and to whether an officer may go **beyond** what *Terry* allows within that very same encounter. Thus, *Terry* is authoritative, not merely useful. *But see* Concurring Op. at 8 ("*Terry* does provide useful guidance here[.]"). In *Terry* itself the officer "confined his search strictly to what was minimally necessary to learn whether the men were armed and to disarm them once he discovered the weapons." *Terry*, 392 U.S. at 30. Here, Officer Grant did not do what was minimally necessary. Officer Grant's actions may be reasonable in the abstract, but not under *Terry*. *See United States v. Sharpe*, 470 U.S. 675, 691 (1985) ("To those who rank zealous law enforcement above all other values, it may be tempting to divorce *Terry* from its rationales and merge the two prongs of *Terry* into the single requirement that the police act reasonably under all the circumstances when they stop and investigate on less than probable cause.") (Marshall, J., concurring in judgment).

Accordingly, while I too would obviously not "needlessly jeopardize officer safety[,]" Concurring Op. at 16, I do not lightly approve an intrusion beyond what *Terry* allowed based on the mere fear that an object "could be" a weapon. As to that point, I now address how the Commonwealth failed to meet its burden.

**II.**

<u>The Commonwealth failed to meet its burden</u>

"[T]he Commonwealth carries the burden at suppression and satisfies that burden if it proves to the satisfaction of the suppression court that the evidence was properly seized." *In re L.J.*, 79 A.3d 1073, 1086 (Pa. 2013). The record "is to be read in the light most favorable to the prevailing party[.]" *Commonwealth v. Cost*, 224 A.3d 641, 650 (Pa.

2020). The Majority holds that the Commonwealth met its burden to establish a "reasonable suspicion that the object is a weapon[,]" Majority Op. at 17, even though "Officer Grant candidly testified during the hearing on Appellant's motion to suppress physical evidence that at the time of the frisk he did not know what the object in Appellant's left pants pocket was but he feared the object could be a weapon." *Id.* at 18.

The foregoing quotation encapsulates what I see as the fundamental flaw in the Commonwealth's case. The officer's candid testimony that he did not know what the object was but merely feared it "could be" a weapon is plainly insufficient to establish that T.W.'s rights were not violated. Contrary to the Majority's notion that reasonable suspicion exists so long as the officer cannot rule out that the item was not a weapon, the Commonwealth's burden logically encompasses an adequate explanation for why the officer reasonably suspected that what he felt could have been a weapon.[4] We cannot

---

[4] According to the Majority, in *Terry* "[t]he term 'weapon' was given a broad definition by the Court, which did not define the term to refer solely to guns or knives, but defined the term to include 'guns, knives, clubs, or other hidden instruments.' " Majority Op. at 8 (quoting *Terry*, 392 U.S. at 29). The Majority truncates the actual quote. What *Terry* says is this: "The sole justification of the search in the present situation is the protection of the police officer and others nearby, and it must therefore be confined in scope to an intrusion reasonably designed to discover guns, knives, clubs, or other hidden instruments **for the assault of the police officer**." *Terry,* 392 U.S. at 29 (emphasis added). The purpose of a *Terry* frisk "is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence[.]" *Adams v. Williams*, 407 U.S. 143, 146 (1972). In weighing officer safety versus individual privacy interests, the *Terry* Court observed that "every year in this country many law enforcement officers are killed in the line of duty, and thousands more are wounded. Virtually all of these deaths and a substantial portion of the injuries are inflicted with guns and knives." *Terry*, 392 U.S. at 23–24. In my view, the *Terry* Court's reference to "instrument" referred to the meaning of the word as a device designed for a particular use, that being a violent assault on the officers or nearby people. The Majority, in contrast, treats "objects" and "instruments" as synonyms.

I agree with the Supreme Court of Rhode Island that *Terry* is limited to "typical" or "obvious" weapons, a formulation that excludes medicine bottles. *See State v. Black*, 721

accept rank speculation; an "officer must be able to articulate more than an inchoate and unparticularized suspicion or hunch of criminal activity." *Illinois v. Wardlow*, 528 U.S. 119, 123–24 (2000) (quotation marks omitted). The Majority, unfortunately, bases its conclusion on nothing more than an unparticularized suspicion.

Reduced to its essence, I perceive four key facts that, when viewed in the light most favorable to the Commonwealth, support the Majority's conclusion that Officer Grant reasonably suspected that the object he felt was a weapon.[5] First, upon conducting the pat-down, Officer Grant "felt a large object in [T.W.'s] left pants pocket." N.T., 7/10/2018, at 17. Next, the item "was large" and he "felt the need to take it out." *Id.* The judge interjected to ask if the item was "hard" or "soft," and the officer replied that it was "hard." *Id.* When the trial judge asked "[w]hat were your concerns?", Officer Grant stated that "it

---

A.2d 826, 831 (R.I. 1998) ("Although an officer may not identify readily a hidden object's status upon his initial touching of the object through the suspect's clothing, the officer is entitled to ascertain the item's contour or mass to negate the presence of typical or obvious weapons.").

[5] I omit from this calculus the facts unfavorable to the Commonwealth, which arguably contradicts the testimony. Primarily, Officer Grant did not dispute T.W.'s suggestion that the object was "two to three inches in height," instead saying, "I don't recall the exact size." N.T., 7/10/2018, at 21. Nonetheless, Officer Grant logged the item and sent it for testing, providing more details on that point. The lab report shows that this item was approximately ninety-eight grams, or about three and one-half ounces. It is hard to imagine that such an item felt "large."

Additionally, Officer Grant indicated that the basis for recovering the item may have been due to his training in narcotics. The prosecutor asked Officer Grant if he had personal experience making narcotics arrests, to which he said, "Yes." The prosecutor then asked, "And do you have any training with narcotics investigations?" The officer stated he did not, aside from the police academy training. Next, the prosecutor stated, "And did any of your training and experience (unintelligible) to your decision to take that out of his pocket?" He answered, "Yes." *Id.* at 17–18.

could have been a weapon. It could have been a firearm." *Id.* at 28. Thus: the object was (1) large, (2) hard, and (3) could have been a weapon or (4) firearm.

This testimony does not enable a reviewing court to conclude that an objectively reasonable police officer would suspect that the item was a weapon. The glaring flaw in this evidence is that the terms "hard" and "large" are inherently subjective and do not supply a non-speculative basis to conclude anything regarding the item. Both terms are meaningless unless compared to something, as almost anything is "hard" when compared to a pillow or "large" when compared to a paperclip. The terms standing alone tell a court nothing. Of course, contextual comparison evidence was readily available. The Commonwealth could have asked Officer Grant to describe the part of T.W.'s body from which the object was recovered. Was the item in a waist pocket or a cargo pocket closer to the knee? Was the item larger or smaller than T.W.'s thigh? How large was T.W.? Did the object cause a visual bulge? How big was the pocket itself? Were there any other objects in T.W.'s pockets? Did the object he felt occupy most of that pocket? Could he roughly estimate how big the object felt? Was it bigger or smaller than a pack of cigarettes? Was it harder than a pack of cigarettes? The record is completely devoid of any evidence illustrating the contours, mass, or size of the object other than the purely subjective terms "large" and "hard."

By way of comparison, in *Commonwealth v. Stevenson*, 744 A.2d 1261 (Pa. 2000), which was cited by T.W. during the hearing as a basis to suppress, this Court summarized the trooper's tactile impressions: "Trooper Oberdorf testified that upon patting down R.A., he felt what appeared to be a 'cigarette or a cigar' and a 'similar object to a pill bottle' in the liner of R.A.'s jacket." *Id.* at 1265. I see no reason why similar comparisons were not

made here.  Additionally, Officer Grant did not explain how the object could possibly have been a firearm based on what he felt.  In fact, immediately after informing the trial court that the object could have been a firearm, he agreed that firearms "have a handle that bends around" in an "L-shape."  N.T., 7/10/2018, at 27.  Nothing in his testimony indicates that the object felt anything like that.  Thus, Officer Grant ruled out the likelihood that the object he felt was a firearm.

Taken together, this testimony sheds little light on what Officer Grant felt beyond the subjective terms "hard" and "large."  The Majority nonetheless accepts that the Commonwealth established reasonable suspicion that the item, which turned out to be a medicine bottle comparable to "a bottle of Nyquil," *id.* at 21, was a weapon.  That conclusion rests on little more than crediting Officer Grant's subjective beliefs.  Indeed, there is nothing in the Majority's analysis that suggests the outcome would be any different if Officer Grant had testified that he "felt a large, soft object" or a "small, hard object" or even just "an object."  In each of those alternatives, the description conveys just as much (or little) information about what he felt.  Thus, while Justice Wecht believes that the Majority creates a "hard object" exception, I believe its opinion goes further than that when read against the actual facts.  It announces an "indeterminate object" exception.[6]

---

[6] It is telling that instead of explaining how this object could have possibly been a weapon that posed a danger to the officers or others, the Majority largely relies on generic facts that justify the ability to conduct a pat-down at all, such as T.W.'s presence in a vehicle involved in a police chase, a high crime area, and T.W.'s attempt to shield his body from view while in the vehicle.

The Majority largely ignores everything that happened after T.W. was ordered to exit the vehicle.  Nothing in the testimony indicates that T.W. was combative, uncooperative, or otherwise threatening after exiting the vehicle.  While I agree that T.W.'s act of blading his body while inside the vehicle indicates danger, the officers did not draw their firearms.  Nor did Officer Grant's partner appear to feel threatened, as the testimony indicates that

Justice Dougherty's concurrence implicitly recognizes these deficiencies and offers suggestions for what kind of facts should be presented for a court's consideration, including more detail about the tactile impressions. My learned colleague then notes circumstances that could pose obstacles, such as bulky clothing that "may make it difficult to assess the particulars of an object's shape, size, or material through an open-handed pat-down." Concurring Op. at 22. Of course, those problems do not appear in this case, as the encounter took place on a June day and nothing indicates that T.W. was wearing bulky clothing. Nor is it simply preferable to establish the necessary facts; it is mandatory. The Court's willingness to overlook this deficient record makes it unlikely that the Commonwealth will pay any attention to Justice Dougherty's advice. Why would they? If this Court blesses the scant testimony presented here by holding the Commonwealth satisfied its burden, prosecutors will doubtlessly point to the facts of this case in future suppression hearings.[7]

---

he remained with the other two occupants. The *Terry* frisk focuses on weapons that could be used in a violent assault, *see supra* note 4, and the officers were in uniform. The Majority does not explain how the felt item posed a threat under these circumstances. *See State v. Crook*, 485 N.W.2d 726, 729–30 (Minn. Ct. App. 1992) ("It is also reasonable to conclude that a weapon such as a razor blade hidden in the cap would not present harm or danger to a police officer armed with a gun.").

[7] Justice Dougherty claims my concern is that prosecutors will elicit "less detailed" testimony than that presented here. Concurring Op. at 24 n.11 (emphasis omitted). My concern is with this testimony, which the Court finds satisfied the Commonwealth's burden despite it resting on nothing more than subjective terms like "hard" and "large." *Compare id.* at 24 ("[O]fficers should not rely on broad generalities, or assume certain 'magic words' will satisfy the reasonable suspicion standard."), *with id.* at n.11 ("[T]he totality of the circumstances here, including Officer Grant's identification of a large and hard object he believed might be a weapon, provided the requisite reasonable suspicion to proceed into appellant's pocket.").

Furthermore, contrary to Justice Dougherty's view, there was no failing on the part of defense counsel in this case because the defendant had no burden to provide objective

**III.**

<u>The Majority effectively displaces *Dickerson*</u>

Indeed, presenting more testimony might well have caused problems for the Commonwealth, as more facts regarding what Officer Grant felt may have indicated that he realized the object was likely to be a medicine bottle. If so, there was no possibility that the item was a weapon.[8] At that point, the only basis to seize the item was pursuant to *Minnesota v. Dickerson*, 508 U.S. 366 (1993), wherein the High Court held that the Fourth Amendment is not violated when an officer immediately seizes contraband detected during a pat-down under certain circumstances.

> If a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons; if the object is contraband, its

---

parameters to Officer Grant's purely subjective testimony using "magic words" describing his tactile impressions leading to his subjective belief, post pat-down, that the object "could have been a weapon."

[8] Justice Dougherty would hold that until the officer dispels the presence of a weapon, a reasonable suspicion still exists. Of course, Officer Grant did in fact dispel a belief that T.W. was armed and dangerous if he determined that the item felt like a bottle of Nyquil, which is nonthreatening contraband and by definition not a weapon. If the testimony had established that point, then *Terry* has served its function of protecting officer safety and the authority to conduct a frisk has terminated. In fact, the underlying state court decision in *Dickerson* determined that "[t]here was never any possibility that the object in the defendant's pocket was a weapon, and there was no justification for grabbing it as a matter of self-protection because the defendant never made an aggressive move." *State v. Dickerson*, 481 N.W.2d 840, 845 (Minn. 1992). The same point is true here had Officer Grant actually recognized that the item was a medicine bottle.

I do not suggest that Officer Grant did in fact know or suspect what the item was; as I have explained the testimony is so limited that a reviewing court cannot conclude much of anything. My point is simply that the Majority and Justice Dougherty strip *Dickerson* of any meaning when they each determine that the Commonwealth has met its burden on this scant record.

> warrantless seizure would be justified by the same practical
> considerations that inhere in the plain-view context.

*Id.* at 375–76.

The corollary to this is that when it is not immediately apparent to the officer that an object is nonthreatening contraband, he or she cannot manipulate the object despite lingering suspicions that the item is contraband, and certainly cannot remove it. Thus, had Officer Grant's testimony indicated that what he felt was a medicine bottle, that would be nonthreatening contraband, and the Commonwealth would have to establish that it was "immediately apparent" the bottle was contraband to justify its seizure.

The Majority provides an easy way to avoid *Dickerson*'s heightened "readily apparent" requirement. The officer must simply testify that "at the time of the frisk he did not know what the object … was but he feared the object could be a weapon." Majority Op. at 18. With this simple statement, *Dickerson* does not apply.[9] The Majority correctly recognizes that the "plain feel" doctrine independently authorizes a seizure of nonthreatening contraband, whereas *Terry* itself does not. *Id.* at 15–16. Indeed, the Majority acknowledges that *Dickerson's* "plain feel doctrine is an extremely narrow doctrine[.]" *Id.* at 14. However, the Majority fails to recognize that the narrow applicability of *Dickerson* **favors** T.W. Stated differently, the Majority expands the otherwise-narrow

---

[9] The objective nature of the Fourth Amendment inquiry means that an officer's subjective belief that an item is or is not a weapon is irrelevant. *See Maryland v. Macon*, 472 U.S. 463, 470–71 (1985) ("Whether a Fourth Amendment violation has occurred turns on an objective assessment of the officer's actions in light of the facts and circumstances confronting him at the time, and not on the officer's actual state of mind at the time the challenged action was taken.") (quotation marks and citation omitted). Thus, the Majority's holding will have wide application.

*Dickerson* exception by transforming *Dickerson* cases into *Terry* cases through a simple declaration that the object "could have" been a weapon.

In *Stevenson*, in one of the consolidated cases at issue in that appeal the trooper testified that the item he felt was similar to a pill bottle. We held that the objects could not be seized under *Dickerson,* because "although Trooper Oberdorf felt what he described as a cigar or cigarette and a pill bottle during his frisk of R.A., he did not plainly feel, as *Dickerson* requires, objects that were immediately apparent to him **as contraband**." *Stevenson*, 744 A.2d at 1265. This case involves a quite similar item, as Officer Grant agreed that the item he removed from T.W.'s pocket was comparable to a Nyquil bottle. N.T., 7/10/2018, at 21. Apparently, the *Stevenson* result would have been different if the trooper had simply testified that he felt a "hard" and "large" object that could have been a weapon. *See also Commonwealth v. Guillespie*, 745 A.2d 654, 659 (Pa. Super. 2000) (concluding that "pill bottles were not 'immediately apparent' contraband"); *Bailey v. State*, 987 A.2d 72, 84–85 (Md. 2010) (holding that an officer could not seize what he recognized as a glass vial because "the incriminating nature of the object in the defendant's pocket was not immediately apparent upon his initial touch of the object in the pat-down").

Thus, the Court today creates a *Dickerson* loophole: the narrow exception to the warrant requirement preventing officers from immediately seizing nonthreatening contraband will not govern if the Commonwealth argues that whatever the officers felt could have been a weapon. The fact that the Majority accepts that this testimony could qualify the item as a weapon establishes the precedent that ensures almost anything else will, too.

For the foregoing reasons, I would reverse.